COMMONWEALTH *vs.* HENRY E. PARSONS.

Middlesex.    March 11, 1907. — May 16, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Homicide. Murder. Evidence,* Remoteness, Presumptions and burden of proof, Opinion: experts. *Practice, Criminal,* Conduct of trial, Exceptions, Verdict, Proof of malice. *Intoxication.*

At the trial of an indictment for murder in the second degree, where it appeared that the defendant had shot and killed the deceased as he was ascending a staircase to a tenement occupied by the defendant, and the defendant had testified that before the shooting he had been drinking heavily, that he did not see

any one when he shot but thought there were burglars in the house, and that he was looking upstairs where he thought the burglars were and fired downward, intending to frighten them, the defendant offered to prove by his wife that within a year before the shooting she had seen a burglar in the house and had told the defendant of it, and to prove by a person who lived in an adjoining house that four years before the shooting one thousand dollars worth of jewelry had been taken by burglars from that house, that this was a fact notorious in the neighborhood and had been brought to the knowledge of the defendant, and that the defendant when drunk always feared burglars or was suspicious of there being burglars in the house. The judge excluded the evidence of the previous burglaries or attempted burglaries and of the defendant's knowledge of them. *Held*, that, even if such evidence could have been considered upon the question of the defendant's state of mind at the time of the homicide, in the absence of anything to show a continuous state of mind or a continuous course of conduct, the evidence of these disconnected matters properly might be excluded as too remote.

In a trial for murder in the second degree an expert on insanity, who had testified for the government, on his cross-examination was asked a hypothetical question concluding with the words " In your opinion, was the defendant at the time of the shooting under these circumstances of sound mind." The defendant's attorney insisted upon a direct answer. The witness refused to give such an answer unless one element was taken out of the question. The defendant's attorney refused to do this, and the presiding judge, against the defendant's objection, allowed the witness " to answer and make explanation." It did not appear what explanation the witness made. After making it, he answered that the defendant in his opinion was of sound mind and was responsible for his act. *Held*, that the allowance of the explanation was a matter wholly within the discretion of the presiding judge and was not subject to exception.

Exceptions taken at a trial for murder, which are based upon a possible finding that the defendant is guilty of manslaughter only, are made immaterial by a verdict of guilty of murder in the second degree.

At the trial of an indictment for murder in the second degree by shooting, it is proper to refuse a request for a ruling that, " if the jury find that the defendant, by firing the gun, under the circumstances, did not intend to shoot the deceased or anybody else, but merely to frighten strangers he believed to be in the house, then the defendant is not guilty of the crime of manslaughter," and also to refuse a request to rule that if the jury find that the defendant " unintentionally shot the deceased, he is not guilty of manslaughter," because these statements do not exclude the existence of criminal recklessness by which manslaughter or even murder may be committed.

At the trial of an indictment for murder in the second degree by shooting, it is proper to refuse a request for a ruling that " the jury will not be justified in finding the defendant guilty of manslaughter unless they are satisfied beyond a reasonable doubt that in firing the gun he intended to shoot the deceased, and without sufficient excuse or justification," because this statement overlooks the fact that a specific intention to kill is not necessary to manslaughter or even in every case to murder.

At the trial of an indictment for murder in the second degree by shooting, the defendant asked for an instruction that " There is no presumption in this case that the defendant, in firing the gun, intended to shoot the deceased or anybody else." The judge instructed the jury that the burden was upon the government to prove beyond reasonable doubt every essential point in its case, and " that they were to find the intent of the defendant from all the facts, including

what he said and his use of the gun." *Held,* that the instruction given substantially complied with the request, necessarily excluding from the consideration of the jury any presumption that in firing the gun the defendant intended to shoot the deceased or any one else, and leaving the jury the right to infer that the defendant intended the natural consequences of whatever he did intelligently.

At the trial of an indictment for murder in the second degree by shooting, where it appeared that the defendant shot the deceased as he was ascending a stairway toward a landing on which the defendant stood, the defendant asked the judge to instruct the jury that it must appear to the satisfaction of the jury beyond a reasonable doubt that the defendant fired the gun intending to shoot the deceased, that if the defendant had no motive for killing the deceased and did not know that it was he who was on the stairs, there was no evidence of malice and the defendant was not guilty of the crime charged in the indictment, and that there was no evidence in the case warranting the jury in finding ",that at the time of the shooting the defendant knew and intentionally took the life of the deceased." The presiding judge refused to give these instructions. *Held,* that the refusal was right ; that, if the jury found on the evidence in the case that the defendant intentionally shot and killed the deceased without any justification whatever, they had a right also to find that the defendant acted with malice, and that it was immaterial whether he had or had not recognized the deceased or knew who it was on the stairs.

Where at the trial of an indictment for murder in the second degree by shooting, the jury return a verdict of guilty, and it appears that under the instructions given by the presiding judge they must have found it proved beyond a reasonable doubt that the defendant with malice aforethought fired upon the deceased intending to wound or kill him, without any other justifying or excusing circumstances than such as may have arisen from his voluntary intoxication, exceptions to the refusal by the presiding judge of requests for instructions based on and assuming alleged facts which are negatived by the verdict, need not be considered by this court, and it is not necessary to determine whether any of the instructions thus requested should have been refused for the additional reason that there was no evidence to support them.

An instruction of the presiding judge at the trial of an indictment for murder in the second degree that insanity, whether resulting from intoxication or from any other cause, would prevent criminal responsibility, but that intoxication would not, was stated not to be open to objection, although it was not passed upon because no exception to it was taken.

It may be true that, if one who has committed a homicide, which otherwise would have been murder in the first degree, was at the time of his act so far overcome by intoxicating liquor as to be mentally incapable of deliberate premeditation, he cannot be convicted of murder in the first degree, but, if this is so, it does not prevent him from being convicted of murder in the second degree.

INDICTMENT found and returned on September 3, 1906, for murder in the second degree, charging that the defendant on July 24, 1906, at Somerville "did assault and beat George W. Gilmore with intent to murder him by shooting him in the body with a gun loaded with powder and ball, and by such assault and beating did kill and murder the said George W. Gilmore."

In the Superior Court the defendant was tried before *Bell,* J.

The government introduced evidence that Gilmore, who had been for some time a lodger in the defendant's family and had left them about the first of June, went to the defendant's house shortly before seven o'clock in the morning of Tuesday, July 24, 1906, accompanied by one Field, a driver of an express wagon, to get his trunk.

Field testified that he backed his team up and went up the front steps; that the door was closed, but not locked; that Gilmore opened it, using no key, and went up the stairs, Field following; that when Gilmore was within a few steps of the landing at the head of the inner stairs, Field heard the defendant say: "You son of a bitch, get down"; that the defendant was at the time beside the railing on the landing at the head of the stairs; that he had a gun at his shoulder; that Gilmore said, "Good morning, Parsons," and went up another step; that Parsons shouted four or five times for Gilmore to get down; that Gilmore replied, "That is all right"; that Parsons then shot, the gun being about one and one half feet from Gilmore at the time of the shooting; that the light was good and he could see Parsons distinctly.

Dr. Durrell, medical examiner, testified that he viewed the body at about 8.30 A. M. on the day of the shooting and that the death was due to hemorrhage and was practically instantaneous.

It appears from the testimony of the defendant's wife that immediately before Gilmore and Field entered the house she had left it to get liquor for her husband, at his request; that he had been drinking for a week and that the night before he had abused her.

It also appeared from the testimony of one Lapham, the landlord who let the tenement to the defendant, that within two hours after the shooting Mrs. Parsons told him that the defendant told her that if she should bring an officer to the house he would shoot her and the officer too.

It further appeared from the testimony of a police officer, one Crossman, that the defendant's wife hid his revolver a few days before the shooting and that the defendant then loaded the musket with which the shooting was done and said that he would use it against her or any one else.

The defendant testified that he had been drinking heavily

before the shooting; that he did not see any one when he shot, nor before he shot, nor after he shot; that he thought there were burglars in the house and that he was looking upstairs where he thought the burglars were and fired downward, intending to scare or frighten them; that it was only when he was committed to jail and was told by his wife that he had shot Gilmore that he knew anything at all about it.

Dr. Buffum, called by the defendant, testified that he had been Parsons's family physician for four years and that he was of the opinion that the defendant at the time of the shooting was suffering from temporary aberration of mind; that when drunk he always seemed to be temporarily insane.

Dr. Edward R. Utley, the prison physician, called by the government in rebuttal, testified that he first saw the defendant about noon on the day of the shooting and that he had examined him since; that the defendant was not insane at the time of trial or at the time of the shooting. He further stated that Parsons told him in company with Dr. Jelly some weeks after the shooting that he saw a man coming up the stairs at the time he shot, but did not know who he was; that he shot the person coming up, but did not know whom he had shot.

Dr. Jelly, an expert on insanity, testified that some weeks after the shooting he examined the defendant, who stated to him that he heard some one coming upstairs and ordered him to go down; that the defendant stated to him that he would shoot his head off; that the man answered "The hell you will"; that he saw the man, shot at him and he fell and that he did not recognize him. Dr. Jelly further testified that the defendant was sane at the time he examined him and was sane at the time the homicide was committed.

The defendant offered to prove by the wife of the defendant that a burglar was seen in his house within a year before; that she had seen him, and that she told her husband of it. This the judge excluded, and the defendant excepted.

The defendant offered to prove by one Lindley, who lived in the house directly adjacent to that in which the defendant lived, that four years before the shooting Lindley's house had been entered by burglars and one thousand dollars worth of jewelry had been taken from it; that this was a notorious fact in the

neighborhood and had been brought home to the knowledge of Parsons; that Parsons when drunk always feared burglars or was suspicious of there being burglars in the house. Evidence of the Lindley burglary and of Parsons's knowledge of it was excluded by the judge on the ground that it was too remote, and the defendant excepted.

In the cross-examination of Dr. Jelly, the defendant's attorney asked a hypothetical question concluding with the words "In your opinion, was the defendant at the time of the shooting under these circumstances of sound mind?" and insisted upon a direct answer. This the witness refused to give unless one element was taken out of the question. This the attorney refused to do, and the judge, against the defendant's objection, permitted the witness to answer and make explanation. The defendant excepted. The witness answered that the defendant in his opinion was of sound mind and responsible for his act.

The defendant made the following sixteen requests for rulings and instructions to the jury:

1. There is no presumption in this case that the defendant, in firing the gun, intended to shoot the deceased or anybody else. This is a question for the jury to decide.

2. The jury will not be justified in finding the defendant guilty of murder in the second degree unless they are satisfied beyond a reasonable doubt: (1) That he fired the gun intending to wound or kill the deceased, and (2) that he did this with malice aforethought.

3. Upon all the evidence in the case, the defendant is not guilty of murder in the second degree. The fact that he used a deadly weapon and in a careless manner is not enough. To warrant a finding of malice, it must appear to the satisfaction of the jury beyond a reasonable doubt that he wilfully fired the gun intending to shoot the deceased, and if the jury have a reasonable doubt as to his intention to shoot the deceased, the defendant is not guilty.

4. If the jury find that there was no previous quarrel or ill will of any kind between the defendant and Gilmore, that the defendant had no motive for killing the deceased, no spite or revenge and no advantage to gain, and that at the time of the shooting the defendant did not know that it was Gilmore who

was on the stairs, then there is no evidence of malice in the case and the defendant is not guilty of the crime charged in this indictment.

5. There is no evidence in the case that the defendant either procured or loaded the gun with the intention of shooting anybody, and if the jury find that he simply picked up and fired the gun to frighten an intruder, under a reasonable apprehension of some immediate and serious bodily danger, however mistaken, he is not guilty of any crime and should be discharged.

6. If the jury find that the defendant, under the circumstances, had reason to believe that the deceased was some stranger, intending to do him or his little boy great bodily harm, and that there was imminent danger of such harm which he had reason to believe no other means could effectually prevent, he would be justified in defending himself by shooting although it afterwards turned out that the appearances were false and that, in fact, there was no such danger.

7. There is no evidence in the case to warrant the jury in finding that at the time of the shooting the defendant knew and intentionally took the life of the deceased.

8. If the jury find that the defendant, in firing the gun, under the circumstances, did not intend to shoot the deceased or anybody else, but merely to frighten strangers he believed to be in the house, then the defendant is not guilty of the crime of manslaughter.

9. The jury will not be justified in finding the defendant guilty of manslaughter unless they are satisfied beyond a reasonable doubt that in firing the gun he (1) intended to shoot the deceased, and (2) without sufficient excuse or justification.

10. Every man has a legal right to own and carry firearms for the purpose of protecting property, self-defence or amusement. There is no evidence in the case that at the time of the shooting the defendant was in pursuit of any other unlawful act which contributed to or caused the death, and, if the jury find that he unintentionally shot the deceased, he is not guilty of manslaughter.

11. There can be no crime without a criminal intent, and if the jury find that he did not intend to kill or shoot the deceased or anybody else then, as he was not committing or attempting

to commit any criminal act, causing or contributing to the death, he is guilty of no crime, and should be discharged.

12. The jury must be satisfied beyond a reasonable doubt of every essential point in the government's case, so that they can come to no other reasonable conclusion. If, on the contrary, they have a reasonable doubt as to any one essential point, then the government has failed to make out its case, and he should be discharged.

13. While mere intoxication is no excuse for crime, yet if the jury find that at the time in question the defendant, from an excessive use of intoxicating liquor, or the want of it, was actually under some sudden apprehension of immediate bodily danger, and for the moment deprived of his reason and self-control so that the shooting was not the product of his mind and did not proceed from his will, there was no criminal intent on his part within the meaning of the law. In other words, if the discharge of the gun was the act of a man for the moment insane, whatever the cause of that insanity, it was no crime, and the defendant should be discharged.

14. If, upon all the evidence in the case, the jury find that the defendant fired the gun under a sudden and uncontrollable impulse, without intending to shoot or kill anybody, then it was an accidental homicide, and the defendant should be discharged.

15. If the jury find that the defendant intentionally killed the deceased, but not knowing who he was ; that for any reason he thought it was night time and believed that the deceased was a burglar who had entered the house for some evil purpose ; that he ordered him out, and that from the reply, as he understood it, he believed that he or his little boy was in imminent danger of serious bodily harm, and that he could not in any other way prevent it, then, however mistaken or unfortunate the results, he was guilty of no crime and should be discharged.

16. There is no evidence in the case upon which to claim that, at the time of the shooting, the defendant was in pursuit of any act, lawful or unlawful, which caused or in any way contributed to the death of the deceased, and, therefore, if the jury find that the shooting of the deceased was unintentional, the defendant is not guilty of manslaughter and should be discharged.

Of the instructions requested as above the judge gave the second and twelfth to the jury, and refused to give the others, the sixth and thirteenth on the ground that there was no evidence to support them.

Full instructions were given as to the distinction between murder in the second degree and manslaughter, and also as to the meaning of the words "malice aforethought." The judge also instructed the jury that the burden was upon the government to prove beyond reasonable doubt every essential point in its case, including the sanity of the defendant. The judge also instructed the jury as to insanity and intoxication as an excuse for crime.

He further instructed them that they were to find the intent of the defendant from all the facts, including what he said and his use of the gun. He instructed them in substance that the government need not prove that the defendant intended to kill Gilmore; that malice was sufficiently established if he shot, intending to kill, even though he did not recognize Gilmore.

The jury returned a verdict of guilty of murder in the second degree; and the defendant alleged exceptions.

*J. A. McGeough*, for the defendant.

*G. A. Sanderson*, District Attorney for the Commonwealth, submitted a brief.

SHELDON, J. The evidence as to the previous burglaries, or attempted burglaries, in the defendant's house within a year before the commission of the homicide, and in Lindley's house four years before that time, was rightly excluded. It could have no proper tendency to show any probability of another burglary being committed in the defendant's house at the time in question. It had no legitimate bearing upon any issue involved in the case. *Commonwealth* v. *Abbott*, 130 Mass. 472. Even if it could have been considered upon the question of the defendant's state of mind at the time of the homicide, evidence of these detached facts might well be excluded as too remote. *Commonwealth* v. *Trefethen*, 157 Mass. 180, 183, 184. *Lane* v. *Moore*, 151 Mass. 87, 90, 91. This was evidence merely of two unconnected matters, three years apart, the latest being about a year before the time in question; there was nothing to show a continuous state of mind or a continued course of conduct, as in *Commonwealth* v. *Holmes*, 157 Mass. 233, 240.

The court rightly allowed Dr. Jelly, when the hypothetical question stated in the exceptions was put to him, " to answer and make explanation." This was a matter wholly within the discretion of the court. *Demerritt* v. *Randall*, 116 Mass. 331. *Commonwealth* v. *Kelly*, 113 Mass. 453. *Miller* v. *Smith*, 112 Mass. 470, 476. *Root* v. *Boston Elevated Railway*, 183 Mass. 418. It does not appear what explanation the witness made, and we cannot presume that it was at all prejudicial to the defendant. His answer to the question was responsive and to the point.

The other exceptions are to the refusal of certain requests for instructions. Some parts of the charge to the jury are stated in the bill of exceptions, the rest not being set out; but no exceptions were saved to the instructions given, and it now must be presumed that these were full and accurate.

The eighth, ninth and tenth requests were directed to a possible finding that the defendant was guilty of manslaughter only. They have become immaterial by the verdict, and need not be especially considered. They could not have been given in any event. The eighth and tenth requests did not exclude the existence of criminal recklessness; the ninth overlooked the fact that a specific intention to kill is not necessary to manslaughter, or even in every case, to murder. See *Commonwealth* v. *Webster*, 5 Cush. 295, 304; *Commonwealth* v. *Hawkins*, 157 Mass. 551, 553. It is now as fully recognized " that a man may commit murder or manslaughter by doing otherwise lawful acts recklessly as that he may by doing acts unlawful for independent reasons, from which death accidentally ensues." *Commonwealth* v. *Pierce*, 138 Mass. 165, 175.

The second and twelfth requests were given; and we are of opinion that the first was given in substance. The jury were told that the burden was upon the government to prove beyond reasonable doubt every essential point in its case, and that they were to find the intent of the defendant from all the facts, including what he said and his use of the gun. This necessarily excluded from the consideration of the jury any presumption that in firing the gun he intended to shoot the deceased or any one else. Indeed it does not appear that the existence of any such presumption was asserted by the prosecution. But it

needs no citation of authorities to show that the jury had a right to infer that the defendant intended the natural consequences of whatever he intelligently did.

The third, fourth and seventh requests could not have been given. As has been already pointed out, murder may be committed without any actual intent, either to kill or to do grievous bodily harm. *Commonwealth* v. *Chance*, 174 Mass. 245, 252. There was evidence upon which the jury had a right to find that the defendant intentionally shot and killed the deceased without any justification whatever. If they did so find, they had a right to find also that the defendant acted with malice. *Commonwealth* v. *Fox*, 7 Gray, 585. In that case it would not be material whether he had or had not recognized the deceased.

As to the fifth, sixth, seventh, fourteenth, fifteenth and sixteenth requests, it is enough to say that without intimating that these correctly stated the law, under the instructions given to the jury they must have found it proved beyond a reasonable doubt that the defendant with malice aforethought fired upon the deceased intending to wound or kill him, without any other justifying or excusing circumstances than such as may have arisen from his voluntary intoxication. This finding negatives the facts assumed in the requests we are now considering. It is not necessary to consider whether any of them should have been refused for the additional reason that there was no evidence to support them. The defendant was not aggrieved by their refusal.

Upon the thirteenth request the judge ruled that insanity, whether resulting from intoxication or from any other cause, would prevent criminal responsibility, but that intoxication would not. He also read to the jury quotations from the opinions in *Choice* v. *State*, 31 Ga. 424, 472 ; *Commonwealth* v. *Hawkins*, 3 Gray, 463, 466 ; *Commonwealth* v. *Malone*, 114 Mass. 295, 298; and *Springfield* v. *State*, 96 Ala. 81, 86. We need not however especially consider the instructions given ; for, as we have said before, they were not excepted to ; nor do we see any ground upon which they were open to objection. The rights of the defendant were fully protected, and the request as presented was rightly refused. See, beside the cases already cited, *Commonwealth* v. *Gilbert*, 165 Mass. 45 ; *United States* v.

*Drew,* 5 Mason, 28; *Kenny* v. *People,* 31 N. Y. 330; *Boswell* v. *Commonwealth,* 20 Grat. 860; *Shannahan* v. *Commonwealth,* 8 Bush, 463; *State* v. *Cross,* 27 Mo. 332; *Bennett* v. *State,* Mart. & Y. 133; *Cornwell* v. *State,* Mart. & Y. 147; *Beasley* v. *State,* 50 Ala. 149. While drunkenness is no excuse or mitigation of a crime committed under its influence, it may yet be true that if one who has committed a homicide which otherwise would be murder in the first degree was so far overcome by intoxicating liquors as to be mentally incapable of deliberate premeditation, he cannot have acted with deliberately premeditated malice aforethought and so cannot be convicted of murder in the first degree upon the ground of such malice. *State* v. *Johnson,* 41 Conn. 584. But no such question is presented here. This defendant was indicted and has been convicted of murder in the second degree only.

*Exceptions overruled.*