COMMONWEALTH *vs.* DAVID R. JOHNSON.

Plymouth. October 3, 1977. — February 23, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Homicide. Practice, Criminal,* Comment by prosecutor, Charge to jury, Capital case, Exceptions: failure to save exception.

An exception to a prosecutor's allegedly improper statements in his final argument not made until after the judge had finished his instructions to the jury was not timely and did not entitle the defendant to review as of right. [457-459]

Statements made by a prosecutor in the course of his final argument were not improper and did not require curative action by the judge where they were based on the evidence. [459-460]

Where a defendant failed to file any request for instructions as to the effect of intoxication on criminal responsibility or to except to the instructions given, this court declined to exercise its powers under G. L. c. 278, § 33E, to adopt a rule which would recognize the defense of diminished capacity resulting from voluntary intoxication. [460-465]

INDICTMENTS found and returned in the Superior Court on April 15, 1975.

The cases were tried before *Brogna*, J.

*Robert S. Potters* for the defendant.

*Helen Murphy Doona*, Assistant District Attorney, for the Commonwealth.

QUIRICO, J.   The defendant was convicted by a jury of the crimes of murder in the first degree (G. L. c. 265, § 1), and

breaking and entering a dwelling house in the nighttime with intent to commit a felony and assaulting a person therein (G. L. c. 266, § 14). The cases are now before us on the defendant's appeals under G. L. c. 278, §§ 33A-33G.

The defendant claims errors by the trial judge with respect to (a) his failure to take curative action concerning alleged improper statements made by the prosecutor in the course of his final argument to the jury, and (b) his instructions to the jury on the effect of the defendant's claimed intoxication at the time of the alleged crimes.

As to the alleged improper argument by the prosecutor the defendant relies on an exception claimed at the trial, and as to the alleged error or deficiency in the instructions he relies primarily on the broad review prescribed by G. L. c. 278, § 33E, for a "capital case" as defined therein.[1] As to the first point there is a question whether the exception was claimed seasonably. After full review we conclude that the defendant is not entitled to relief, and that the judgments should be affirmed.

We summarize the evidence to the extent necessary for disposition of these appeals.

Walter Rudd, the victim, was seventy-four years old and lived alone in a first-floor apartment in Brockton. On the morning of February 18, 1975, his daughter and granddaughter tried without success to reach him by telephone and therefore went to his apartment just before noon. They entered with a key which he had given them and they found

[1] General Laws c. 278, § 33E, as amended through St. 1974, c. 457, provides in part: "In a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence. For the purpose of such review a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder either in the first or second degree."

him dead. He was seated in a chair opposite a television which was in operation. The screen to a window in the kitchen of his apartment had been removed from the outside and the window was wide open. The screen was found on the porch outside the apartment, leaning against the wall under the window. Several articles of furniture in the victim's parlor were found to have been moved or upset. A screw driver, an ash tray, and the victim's cane were found on the floor several feet away from him. His eyeglasses were broken. His wallet and bank book, each containing some money — perhaps $20 to $40 in currency — were found on a table beside his chair. There was blood on his forehead, a blood stain on his undershirt in the area of the left side of his chest, and another on the rug beneath his chair. The victim's bed was fully made up, indicating he had not gone to bed the previous night. Photographs taken by a police officer that same day depicting substantially all of the conditions described above were introduced in evidence.

The medical examiner arrived at the victim's apartment at 1:40 P.M. on February 18, 1975. On seeing the victim's body he "made a superficial, cursory examination . . . [and] found spatterings of blood and a marked rigor, indicating to . . . [him that the victim] had in all probability been dead 10 to 12 hours." Later that afternoon he and a forensic pathologist performed an autopsy on the body and both testified at the trial. The autopsy revealed that the victim had suffered a stab wound on the left lateral chest, between the eighth and ninth ribs, penetrating entirely through the lower lobe of the left lung. The wound was variously described as between six and eight inches deep, and it penetrated the aorta. The victim died as a result of that "stab wound of his left chest with massive internal bleeding into his left thoracic cage."

The evidence tending to implicate the defendant in the crimes charged against him consisted almost entirely of admissions attributed to him and to his alleged accomplice,

Harold Williams,[2] by three of their friends who were called and testified as witnesses for the prosecution.[3]

Williams was living with K.P. for some time through February 17, 1975. Williams and the defendant were at K.P.'s apartment between 4:30 and 5 P.M. on that day. It can be inferred that when they left there Williams took with him a knife belonging to K.P. K.P. next saw them at some time between 9 and 10 P.M., at which time the defendant had a cut on his hand which he said was caused by punching a wall.

At some time between 10:30 and 11 P.M. on that same evening, the defendant and Williams arrived at the apartment of D.G. where they had a conversation with D.G. and also with B.P., who was there when they arrived. The defendant was asked about some blood on his hand and he explained it by saying that he had punched a wall. He said that he and Williams had just pulled a "B and E" in somebody's house, and that they got nothing in the break. To the witnesses D.G. and B.P. this meant that the two men had broken and entered somebody's house. The defendant said that he and Williams "went in the guy's window and that when they got in there the old guy started making some noise, he was hollering, so they went over to him and they . . . tried to put the screw driver into him and it wouldn't go in, so [the defendant] asked [Williams] for a knife and [Williams] gave it to him." The defendant then stabbed the man. During this same conversation Williams said that during the assault the victim was going to grab his cane, so he grabbed it before him and threw it across the room. The defendant and Williams were in D.G.'s apartment for a period estimated to be from two to six minutes.

---

[2] Charges brought against Williams as the result of this incident were disposed of before the defendant's trial, and he was not a witness at the latter trial.

[3] It would add nothing to the cause of justice or the state or quality of our jurisprudence to disclose the full identity of these three witnesses. It will suffice to refer to them by their initials.

B.P. testified that the defendant, at this time, was "messed up . . . [s]taggering, drunk, just walking, falling all over the place," that there was an odor of alcohol from his breath, that his eyes were "half closed," that he fell down a few times, and that in his opinion the defendant was then drunk.

The following morning, February 18, 1975, when the defendant and B.P. met for breakfast, the defendant repeated substantially what he had told B.P. the previous evening about the break and entry and the assault on the occupant. The defendant said that he hoped the victim "was all right." That same morning there was a conversation between the defendant, Williams and K.P. during which Williams told K.P. that the defendant owed her a knife. K.P. checked her knives and discovered that one knife was missing. She described it as having a blade which was about an inch or an inch and one-half wide and about four to five inches long. It was a knife she kept in a drawer and did not use regularly.

The defendant was placed under arrest at the apartment of K.P. on February 19, 1975. The place of arrest was slightly over a quarter of a mile from the victim's apartment.

The statement of additional evidence or facts is deferred to our discussion of the particular issues raised by the defendant.

1. *Prosecutor's final argument to the jury.* The defendant bases his claim for review of the alleged improper arguments by the prosecutor on an exception that he purportedly claimed at the trial. However, an examination of the transcript discloses that the defendant did not call these statements to the attention of the judge during, or at the close of, the prosecutor's argument. He did not do so until after the judge had finished his instructions to the jury and was ready to submit the case to them. In addition, one of the claims of error that the defendant now makes was not raised at all during the trial.

We have held in a number of cases that "[i]t is the general rule [that] in trials of both criminal and civil causes . . . where an improper argument is addressed to a jury the attention of the judge should be called to it at once." *Commonwealth* v. *Richmond,* 207 Mass. 240, 250 (1911). *Commonwealth* v. *Homer,* 235 Mass. 526, 536 (1920). *Commonwealth* v. *Hassan,* 235 Mass. 26, 32-33 (1920). See *Commonwealth* v. *DiPietro,* 373 Mass. 369, 386-388 (1977). Our restatement of this rule is not to be construed as holding, or even suggesting, that an attorney must immediately interrupt the argument of opposing counsel with an objection and a request for a curative instruction on each occasion when he believes that the argument is improper. It is usually sufficient, depending on the circumstances of the particular situation, if the matter is called to the judge's attention at the end of the attorney's argument. We hold that the objection and exception in this case, made only after the completion of the judge's instructions to the jury, were too late to entitle the defendant to appellate review as of right, apart from the special review of capital cases as defined by G. L. c. 278, § 33E.

Additionally, even if the exception to the prosecutor's argument was timely, the defendant would be entitled to review only as to those matters expressly called to the judge's attention. They were the following: (a) that the prosecutor "by his rhetoric and by statements and innuendo seemingly suggested to the Jury what the evidence was by fact and by reading and by citing verbatim evidence," (b) that the prosecutor referred to three of the Commonwealth's witnesses, presumably K.P., D.G., and B.P., as witnesses who "did not want to testify," (c) that the prosecutor demonstrated before the jury the alleged act of the defendant in trying to stab the victim, and (d) that the prosecutor also demonstrated before the jury the act of Williams in throwing the victim's cane to the floor. We note that in his brief the defendant has argued only the last two of these four matters, and we therefore treat the first two as waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

It was not argued at the trial that there was no foundation in the evidence for the prosecutor's demonstration of the acts of the defendant and of Williams. That there was such evidence is clear. Rather, the defendant's claim in this regard is: "It is well settled that a prosecutor's argument cannot appeal to sympathy, inject personal belief in the defendant's guilt or comment on facts not in evidence," citing in support thereof *Commonwealth* v. *Redmond,* 370 Mass. 591, 593-597 (1976), and *Commonwealth* v. *Earltop,* 372 Mass. 199, 205 n.1 (1977) (Hennessey, C.J., concurring).

Although these propositions may be correct in the abstract, they do not apply to the facts in the case before us, nor do the cited cases. We do not have here a situation such as that described in the *Redmond* case, where the court stated at 591: "We hold that the prosecutor, both in his cross-examination of the defendant and in his summation to the jury, repeatedly and deliberately went beyond permissible limits, and that the cautionary instructions of the judge were insufficient to cure the resulting prejudice to the defendant." Nor do we have a situation such as occurred in the *Earltop* case, where the prosecutor argued to the jury: "I am firmly convinced in my mind, and I am not a juror, that this defendant is guilty of the crime [with which] he is charged." 372 Mass. at 203.

Finally, we find no merit in the claim of the defendant that the prosecutor's demonstrations amounted to an improper "appeal to sympathy," and that "[t]he prosecutor's portrayal of Williams as a callous killer preying upon old men reflected an effort to portray the defendant similarly." Final arguments in a jury trial present the last opportunity for the parties to attempt to convince the jurors of the merit of their case. Counsel for each party is permitted and expected to marshal the evidence and to argue for a decision of the controversy in favor of his client. This process often involves pointing out not only the strength of his client's case, but also the weakness of that of his opponent. This applies as much to a criminal case as it does to a civil case. Thus, the

prosecutor here should not have been prohibited from arguing that the defendant tried to stab the victim a number of times with a screw driver, and that Williams, who the jury were warranted in finding was acting in concert with the defendant, grabbed the victim's cane and threw it down to the floor, because such arguments were in accordance with the evidence. The prosecutor can no more be prohibited from arguing relevant evidence that was heard by the jury than can the judge be prohibited from admitting it. The fact that as a result of hearing such evidence and such an argument by a prosecutor the jurors may have sympathy for the victim is understandable but unavoidable. Any other conclusion would only serve to shield an accused from prosecution in direct proportion to the amount and extent of the force or brutality with which the crime was committed.

The defendant also advances now the claim that the prosecutor improperly argued that after the defendant stabbed the victim, "[t]he man sat there for probably two or three hours and bled to death and died, 74 years of age." However, since this contention was not presented to the judge by the defendant in his belated objection to the prosecutor's argument, it is not properly before us on appeal. In any event, it is without merit. The evidence fully supports and warrants that argument by the prosecutor. The evidence permits a finding that the victim was stabbed before 10 P.M. on February 17, 1975, and that he was first seen by the medical examiner at about 1:40 P.M. on February 18, 1975. At that time the latter formed an opinion that the victim had probably died approximately ten to twelve hours earlier.

We therefore conclude that, with respect to the final argument by the prosecutor, the defendant is entitled to no relief, whether the claim for relief is based on exceptions or on the review of a "capital case" under G. L. c. 278, § 33E.

2. *Instructions to jury on effect of defendant's intoxication.* At the completion of the Commonwealth's evidence the defendant and his counsel conferred to consider and decide whether the defendant would offer to plead guilty to

murder in the second degree, rest on the Commonwealth's case, or go forward with evidence in defense. During that conference, which was made a matter of record and is part of the transcript before us, counsel advised the defendant that the life sentence for murder in the second degree included the possibility of release on parole; that the jury could consider whether the defendant was intoxicated on the question whether he had committed murder in the first degree by reason of deliberately premeditated malice aforethought; but that, if the jury found that the defendant committed the aggravated burglary with which he was charged, and in the course of so doing he killed the victim, the jury could convict him of murder in the first degree without proof of premeditation, thus eliminating the possibility that the defendant's intoxication could reduce the crime to murder in the second degree. After apparent consideration of these alternatives the defendant elected to rest on the Commonwealth's evidence and to let the case go to the jury for verdict.

The judge instructed the jury that they could return a verdict of not guilty, a verdict of guilty of murder in the first degree, or a verdict of guilty of murder in the second degree. He indicated to them that a verdict of murder in the first degree was warranted if the murder was committed with deliberately premeditated malice aforethought, or if it was committed in the commission or attempted commission of a crime punishable with death or imprisonment for life. His instructions, in so far as they relate to the evidence of the defendant's intoxication, are reproduced in the margin.[4]

---

[4] "Now, there has been some evidence, and it was argued to you by the Attorney for the Defendant, that the Defendant was under the influence of some alcohol or drugs or other intoxicants. I tell you that the voluntary use or taking of alcohol or drugs or anything like that does not excuse, does not mitigate the commission of a crime. What it might do, and this is for your consideration again, it may be important in the context of this case as to whether or not, when you are discussing first degree murder on the basis of deliberate premeditation, as to whether or not he was so befuddled, his mind was so under the influence of the intoxicant that it was not able to form the specific intent I'm going to kill this man. In the

The defendant took no exceptions to the judge's charge, nor did he request any different or additional instructions as to intoxication.

The judge's instructions on the subject of intoxication as it relates to murder alleged to have been committed with deliberately premeditated malice aforethought were in accord with our statement in *Commonwealth* v. *Parsons*, 195 Mass. 560, 571 (1907), that "[w]hile drunkenness is no excuse or mitigation of a crime committed under its influence, it may yet be true that if one who has committed a homicide which otherwise would be murder in the first degree was so far overcome by intoxicating liquors as to be mentally incapable of deliberate premeditation, he cannot have acted with deliberately premeditated malice aforethought and so cannot be convicted of murder in the first degree upon the ground of such malice." *Commonwealth* v. *Appleby*, 358 Mass. 407, 415-416 (1970). *Commonwealth* v. *Soaris*, 275 Mass. 291, 299-300 (1931). See *Commonwealth* v. *Sires*, 370 Mass. 541, 547 (1976), and *Commonwealth* v. *McAlister*, 365 Mass. 454, 463-464 (1974), cert. denied, 419 U.S. 1115 (1975).

The defendant now argues that the law of this Commonwealth, which thus limits the jury's consideration of the defendant's intoxication to the question of premeditation, is unconstitutional, and he asks that we overrule our long-standing principle that, in all other cases, a defendant "cannot use . . . [his voluntary intoxication] as an excuse, or jus-

context of that part of the crime, you may take into consideration, and again it's for your judgment, and yours alone, as to whether if he were under the influence of some intoxicant he was so influenced, so that he was not able to form the requisite plan or intent."

". . . Again, have in mind that in the deliberately premeditated malice aforethought theory, if the Defendant were so intoxicated as to be unable to form a specific intent, he cannot be held accountable for that. Under the felony murder theory, that is a death which ensues in the perpetration or the attempted perpetration of an armed assault in a dwelling in the nighttime, whether he is intoxicated or not, as long as he knew he was breaking in and engaging in an armed assault, his specific intent to murder does not make any difference."

tification or extenuation of crime." *Commonwealth* v. *Hawkins*, 3 Gray 463, 466 (1855). *Commonwealth* v. *Costa*, 360 Mass. 177, 185-186 (1971). *Commonwealth* v. *McGrath*, 358 Mass. 314, 319-320 (1970). *Commonwealth* v. *LePage*, 352 Mass. 403, 419-420 (1967). *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615, 618 (1949). *Commonwealth* v. *Farrell*, 322 Mass. 606, 621 (1948). *Commonwealth* v. *Taylor*, 263 Mass. 356, 361-363 (1928). *Commonwealth* v. *Gleason*, 262 Mass. 185, 191 (1928). *Commonwealth* v. *Parsons*, 195 Mass. 560, 570-571 (1907). *Commonwealth* v. *Gilbert*, 165 Mass. 45, 52-54, 57 (1895). *Commonwealth* v. *Finn*, 108 Mass. 466, 469 (1871). The defendant urges that we adopt instead what is in effect a rule which would recognize the defense of diminished capacity resulting from the voluntary use of intoxicating liquor. He relies principally on the California cases of *People* v. *Conley*, 64 Cal. 2d 310, 314-316, 319 (1966), *People* v. *Ford*, 60 Cal. 2d 772, cert. denied, 377 U.S. 940 (1964), *People* v. *Gorshen*, 51 Cal. 2d 716, 731-732 (1959), and *People* v. *Wells*, 33 Cal. 2d 330, 346, cert. denied, 338 U.S. 836 (1949),[5] and cases to the same effect from a number of other jurisdictions. See Model Penal Code § 2.08 (Proposed Official Draft, 1962); R. Perkins, Criminal Law 898-909 (2d ed. 1969); Annot., 8 A.L.R. 3d 1236 (1966).

The defendant is asking us to accomplish this major change in our long established law in the absence of any foundation for such a request in the record of the proceedings in the Superior Court. He concedes that this question was not raised at the trial. It is helpful to note here what we said in an earlier decision where substantially the same question was raised before us, but where a proper foundation had been laid and an exception saved in the Superior Court. In *Commonwealth* v. *Stewart*, 359 Mass.

---

[5] We note that the result in these cases was mandated at least in part by Cal. Penal Code § 22 (Deering), which states that a jury may consider a defendant's intoxication on the question whether he had the specific intent necessary for the conviction of a particular crime.

671, 679 (1971), judgment vacated per curiam as to death penalty, 408 U.S. 845 (1972), we said: "The defendant finally urges us to reexamine our law concerning the effect of intoxication on criminal responsibility. Specifically he excepts to the judge's refusal to give a requested instruction on this subject, and to the judge's charge that 'you cannot find the absence of a specific intent [to rob] solely because you find drunkenness.' Although there is respectable authority in support of the requested instruction, it was held in *Commonwealth* v. *Gleason*, 262 Mass. 185, 191 [1928], that a defendant was not entitled to an instruction 'that in determining the defendant's intention [of committing the crime of robbery] the jury should consider whether he was under the influence of liquor.' . . . The judge correctly charged the jury in accordance with the foregoing decisions and we are not disposed to overrule them." (Citations and footnotes omitted in the above quotation.)

The defendant argues that, despite his failure to file any request for instructions at the trial and to except to the instructions given, he is entitled to appellate review because (a) "this Court has the power to consider errors absent exceptions so as to avoid a miscarriage of justice which this would surely be if left undisturbed," citing *Commonwealth* v. *Freeman*, 352 Mass. 556, 561 (1967), and (b) "[a]dditionally, this being a capital case, this Court has the duty under G. L. c. 278, § 33E, to review the entire case regardless of the lack of exceptions." This argument is reminiscent of the situation in *Commonwealth* v. *Mazza*, 366 Mass. 30, 33 (1974), where we said: "The defendant here would in a sense have us use § 33E as a vehicle to promulgate the entirely new defence of diminished responsibility based on mental retardation. On the facts of this case, we decline to do so, although we do not state that the mental retardation of a defendant may not be a factor for consideration under § 33E in an appropriate case." In the present case the defendant would have us use § 33E to promulgate the entirely new defense of diminished responsibility based on voluntary intoxication. We decline to do so, al-

though we do not state that the voluntary intoxication of a defendant may not be a factor for consideration under § 33E in an appropriate case.

We look askance when counsel who has tried a case, without success, before a judge and jury on one theory of law, then attempts to obtain appellate review on an entirely different theory which was never advanced or suggested at the trial and which is not based on any objection or exception. Our view is the same notwithstanding the fact that the defendant is being represented on these appeals by counsel other than the one who represented him at the original trial. Neither the conventional type of appellate review permitted in a criminal case, nor the special type prescribed by G. L. c. 278, § 33E, for a "capital case," is intended to afford an opportunity, from the vantage point of hindsight, to comb the trial record for interesting questions which could have been, but in fact were not, raised at the trial, or to attempt to convert the consequences of unsuccessful trial tactics and strategy into alleged errors by the judge. *Commonwealth* v. *McGrath,* 361 Mass. 431, 438-441 (1972). *Commonwealth* v. *Bernier,* 359 Mass. 13, 19-20 (1971). *Commonwealth* v. *Underwood,* 358 Mass. 506, 510-511 (1970).

3. Having examined the record fully, both as to alleged errors properly assigned, and in the performance of our duty under G. L. c. 278, § 33E, with reference to capital cases, we conclude that the defendant is entitled to no relief.

*Judgments affirmed.*