COMMONWEALTH vs. RICHARD HENRY SHEEHAN.

Essex. September 13, 1978. — December 11, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Insanity. Intoxication. Intent. Drug Addiction.*

Drug addiction does not qualify as a mental disease or defect which would support a finding of a lack of criminal responsibility under the test outlined in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). [767-771]

At a criminal trial there was no error in excluding the testimony of a psychiatrist that because of the defendant's severe drug addiction he was unable at the time of the crime to control his actions or to conform his behavior to the requirements of the law where there was no evidence that the defendant suffered from a mental disease or defect recognized under the test outlined in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). [771-772]

Where at a robbery trial a question to a psychiatric witness as to whether the defendant was incapable of forming an intention to commit the crime was excluded and no offer of proof was made, the record was inadequate to raise the issue of the effect of drug consumption on the defendant's capacity to intend to steal or to raise a question as to whether the exclusion of the evidence was constitutionally unfair. [772-776]

At a criminal trial the judge did not err in refusing to instruct the jury that evidence that the defendant acted while in a state of intoxication or under the influence of drugs or both should be considered in determining whether or not the defendant acted with specific intent. [776]

INDICTMENT found and returned in the Superior Court on May 22, 1975.

The case was tried before *Adams,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Edward Berkin* for the defendant.

*Sandor I. Rabkin,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appealed from his conviction of robbery of a registered pharmacist; the Appeals Court affirmed the judgment (*Commonwealth* v. *Sheehan,* 5 Mass. App. Ct. 754 [1977]); and we granted the defendant's application for further appellate review. Before this court, the defendant has focused his argument on his claim that the trial judge improperly excluded psychiatric testimony offered on his behalf.

The testimony of the psychiatrist, heard by the judge on voir dire and excluded, was offered to support the defendant's claims that because of his drug addiction (1) he was not criminally responsible for his conduct under the principles set forth in *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967),[1] and (2) at the time of the crime, he lacked the necessary intent to warrant a robbery conviction. The evidence was properly excluded. We agree with the Appeals Court and affirm the conviction.

The jury could have found that on the evening of March 22, 1975, the defendant entered a drug store in Salem. He went to the counter from which drugs were sold and requested a pharmacist. When the pharmacist came, the defendant put a paper bag on the counter and ordered her

[1] The standard adopted in the McHoul case, often described in this opinion as the McHoul test, was derived from § 4.01 of the American Law Institute's Model Penal Code (Proposed Official Draft 1962), at 66. That section reads in relevant part: "Section 4.01. Mental Disease or Defect Excluding Responsibility. (1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law."

Although, for convenience, the McHoul test has sometimes been characterized as involving a defense of insanity, the word "defense" can be misleading and the word "insanity" is uninstructive. Once the evidence, from whatever source, raises doubt concerning the defendant's mental competence, the issue is not truly one of "defense" because the burden of proving criminal responsibility is on the Commonwealth. *Commonwealth* v. *Laliberty,* 373 Mass. 238, 245-246 (1977), and cases cited.

to fill it with Class A and B drugs. He told her that he was "in a bad way." Summoned by a customer who had left the drug store, the police arrived and arrested the defendant. The defendant testified to his consumption of a considerable amount of drugs, including alcohol, during the winter of 1975, and particularly during the five days prior to his entry into the drug store. He testified that he had no memory of the events in the drug store preceding his arrest.

The defendant's psychiatric expert testified on voir dire that at the time of the crime the defendant was "blacked out" from drug addiction. The defendant was of a "passive dependent character with also a diagnosis of psychological drug dependence of 17 to 18 years' duration, with extreme incapacity to tolerate anxiety." He was addicted to narcotics and alcohol and was an extremely drug dependent person. The psychiatrist testified further that the defendant was not able to control his action of going into the drug store because he was under the influence of various drugs. She stated that drug dependency or drug addiction can be characterized as a mental disease or defect, and that the defendant was not sane at the time of the crime, according to Massachusetts law. She considered him unable to conform his behavior to the requirements of law because of the mental diseases of drug addiction and drug dependency. She characterized his consumption of drugs as involuntary because he lacked the will power to overcome his anxiety and dependence.

1. We reject the defendant's argument that drug addiction itself may qualify as a mental disease or defect which, along with other necessary elements, would warrant a finding of not guilty by reason of insanity under the standards of *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967). Drug addiction, standing alone, does not qualify as a mental disease or defect which would support a finding of a lack of criminal responsibility under the McHoul test.[2]

---

[2] Many courts have held that drug addiction alone is not sufficient evidence of insanity. See, e.g., *State* v. *Valenzuela,* 114 Ariz. 81, 84

If the normal consequences of drug addiction are to be accepted as a ground for avoidance of responsibility for criminal conduct, the Legislature is the appropriate body to make that determination. Although the Legislature has dealt with drug dependency and drug addiction in relation to criminal proceedings, it has not adopted the view that drug addiction absolves a defendant of responsibility for his criminal conduct.[3] Indeed, for all crimes other than drug offenses, the Legislature has adopted a procedure which calls for the sentencing of a drug dependent person in the normal course, with the possibility of drug treatment on the order of the judge and with the consent of the defendant.[4] G. L. c. 123, § 48. With this expression of public policy by the Legislature, we decline to adopt a general rule of law which absolves one from responsibility for criminal conduct based solely on the consequences of the voluntary use of drugs. Consequently, even if medical experts may undertake to characterize

---

(1977); *Cooper* v. *United States*, 368 A.2d 554, 560 (D.C. 1977); *Faught* v. *State*, 162 Ind. App. 436, 443-444 (1974); *Gaskins* v. *United States*, 410 F.2d 987, 989 (D.C. Cir. 1967); *Bailey* v. *United States*, 386 F.2d 1, 4 (5th Cir. 1967); cert. denied, 392 U.S. 946 (1968); *United States* v. *Freeman*, 357 F.2d 606, 625 (2d Cir. 1966).

A few courts appear to have held that evidence of addiction alone is sufficient to support a finding of insanity. See, e.g., *Prather* v. *Commonwealth*, 215 Ky. 714, 717 (1926); *State* v. *Flores*, 82 N.M. 480, 481 (Ct. App. 1971). In *Brown* v. *United States*, 331 F.2d 822, 823 (D.C. Cir. 1964), the court said that narcotics addiction is an illness, but it later referred to this statement as "ambiguous if not misleading" and explained that it did not mean that addiction is a mental illness for the purpose of determining criminal responsibility. *Heard* v. *United States*, 348 F.2d 43, 44 n.3 (D.C. Cir. 1965).

[3] The Legislature has made provision for the diversion of certain drug dependent persons charged with drug offenses to a drug treatment facility. G. L. c. 123, § 47. It has also made provision for certain drug dependent persons found guilty of nondrug offenses to be afforded treatment at penal facilities. G. L. c. 123, § 48.

[4] The defendant was granted and accepted the opportunity to be treated as a drug dependent person.

drug addiction in medical terms as a mental disease or defect, we reject drug addiction alone as qualifying as a mental disease or defect for the purpose of applying the McHoul test.[5]

The essential consideration is not whether the medical profession characterizes drug addiction as a mental disease or defect but rather whether our society should relieve from criminal responsibility a drug addict who at the time of the commission of the crime was unable to conform his conduct to the requirements of law because of his addiction. There are circumstances, not involved in this case, in which a drug addict properly should be relieved of responsibility for criminal conduct. They exist where the defendant lacks criminal responsibility under the McHoul test. For example, if, as a result of a mental disease or defect, apart from his drug addiction, a defendant lacks substantial capacity to conform his conduct to the requirements of law, he should not be barred from asserting his lack of criminal responsibility under the McHoul test merely because he happens to be a drug addict. See Model Penal Code § 2.08, Comment 4 (Tent. Draft No. 9, 1959). Also, if the consumption of drugs causes a mental disease or defect, apart from drug addiction itself, normally the defendant may rely on that mental disease or defect in support of his assertion of his lack of criminal responsibility, even if the defendant's drug consumption was voluntary. See, e.g., *People* v. *Kelly*, 10 Cal. 3d 565, 576 (1973); *Brinkley* v. *United States*, 498 F.2d 505, 511-512 (8th Cir. 1974). Of course, not every instance of an abnormal personality, drug-induced or not, consti-

---

[5] In the expression of the standard of § 4.01 of the Model Penal Code, from which the language of the McHoul test is taken, the American Law Institute used the term "mental disease or defect" not as a matter of medical terminology but rather "to resolve a specific set of legal problems." Model Penal Code § 4.01, at 66 (Proposed Official Draft 1962).

"Intoxication does not, in itself, constitute mental disease within the meaning of Section 4.01." *Id.* at § 2.08(3).

tutes sufficient evidence to require the Commonwealth to assume the burden of proving sanity beyond a reasonable doubt (see *Commonwealth* v. *McInerney*, 373 Mass. 136, 152 [1977]; *United States* v. *Kohlman*, 469 F.2d 247, 250 [2d Cir. 1972]), and where the defendant voluntarily consumes drugs knowing that such consumption will cause a mental disease or defect, a finding of lack of criminal responsibility would not be warranted (see *Kane* v. *United States*, 399 F.2d 730, 733-736 [9th Cir. 1968], cert. denied, 393 U.S. 1057 [1969]; Model Penal Code § 2.08[4] & [5] [Proposed Official Draft, 1962]).

Finally, it must be recalled that the McHoul standard requires that there be a causal connection between the claimed mental disease or defect and the defendant's substantial incapacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. *Commonwealth* v. *McGrath*, 358 Mass. 314, 320 (1970). If the defendant's lack of substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law is solely the product of his voluntary consumption of drugs, he does not meet the McHoul test, even if he has a mental disease or defect. *Id.* In the year after our opinion in the *McGrath* case, we noted as overly favorable to the defendant a judge's charge which stated that the use of drugs would be involuntary (and verdicts of not guilty by reason of insanity would therefore be warranted under the McHoul test) if the defendant's incompetency resulted from the use of drugs which he consumed because of an uncontrollable addiction or drug dependency. *Commonwealth* v. *Costa*, 360 Mass. 177, 186 (1971). We did not say that drug addiction was a mental disease for purposes of the McHoul test, and we did not rule on the implication of the judge's charge that the use of drugs by one addicted to them was an involuntary use. We say at this time, however, that drug addiction plays no part in meeting the McHoul test unless there is a causal connection between the drug addiction and a mental disease or defect of the

defendant. See *United States* v. *Burnim*, 576 F.2d 236, 237 (9th Cir. 1978). In addition, we reject drug addiction alone as an adequate justification for finding that a defendant's consumption of drugs was involuntary and thus his conduct somehow excusable.[6] See Fingarette, Addiction and Criminal Responsibility, 84 Yale L.J. 413, 443 (1975).

We decline to undertake a fuller discussion of drug consumption as a defense to a criminal charge. Courts have taken differing views of such defenses. See Annot., Drug Addiction or Related Mental State as Defense to Criminal Charge, 73 A.L.R.3d 16 (1976 & Supp. 1978). We suspect that knowledge of the consequences of drug consumption on human behavior has not yet reached its full potential, and it is clear that, in many aspects, medical views differ. We prefer to deal with a claim of lack of criminal responsibility on the particular facts of individual cases. We thus proceed to do so as to this particular case.

The psychiatric witness's testimony rested on the erroneous assumption that severe drug addiction, characterized by a craving for drugs, would qualify as a mental disease or defect under the McHoul test. In the absence of an opinion that the defendant suffered from a mental disease or defect recognized under the McHoul test, the witness's opinion evidence concerning the defendant's inability at the time of the crime to control his actions or to conform his behavior to the requirements of law was inadmissible. *Commonwealth* v. *Laliberty*, 373 Mass. 238, 241 (1977). An expert may express an opinion concerning a defendant's mental state at the time of the crime only in accordance with the standard of the McHoul case. *Id.* at 242. Other portions of the psychiatrist's testimony might have been admissible, but the defendant made no

---

[6] In this case, no evidence was offered that the consumption of drugs which led to the defendant's addiction was involuntary. Different considerations may well be appropriate in determining criminal responsibility where a defendant's conduct is affected by a forced, an unknowing, or a lawful consumption of drugs.

attempt to offer that testimony independently of the inadmissible evidence. We note, moreover, that the evidence which might have been admissible, considered with all the other evidence, would not have called for an instruction concerning the defendant's criminal responsibility.[7]

In summary, we reject both drug addiction and the normal consequences of the consumption of drugs as a basis for a claim of lack of criminal responsibility. If the law of this Commonwealth is to be changed in this respect, it is a matter for action by the Legislature, at least at this time.

2. We come then to the defendant's argument that his expert's testimony was admissible to prove that, because he was under the influence of drugs, he lacked the intent to steal which is an essential element of the crime of robbery. See G. L. c. 277, § 39; *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 790 (1975). He does not argue that his mental condition justified a defense of diminished responsibility. We have consistently rejected any claim that voluntary intoxication can be an excuse or justification for a crime. See *Commonwealth* v. *Johnson*, 374 Mass. 453, 462-465 (1978), and cases cited. The claim here is that the psychiatrist's testimony would have tended to show that the crime of robbery was not committed because the defendant did not have the necessary intent to steal.

The record does not indicate what evidence the defendant intended to offer on this issue. In the course of the voir dire, his psychiatric witness was asked whether it was her "opinion that the defendant was capable or inca-

---

[7] The testimony of the psychiatrist that the defendant was of a "passive dependent character with also a diagnosis of psychological drug dependence of 17 to 18 years' duration, with extreme incapacity to tolerate anxiety" might have been relevant to the issue of his criminal responsibility. But, even if that evidence was admissible, in the absence of any other evidence relevant to the defendant's criminal responsibility, no jury issue involving the McHoul test was raised.

pable of forming an intention in his mind to rob the drug store?" The question was excluded, over objection, and no offer of proof was made. The witness earlier had testified that, in her opinion, the defendant was unable to control his actions in seeking drugs in the drug store. We are left with no impression of the witness's opinion concerning the defendant's capacity to understand what he was doing. There was evidence that the defendant was "blacked out" during the commission of the crime, but obviously his mind was functioning in certain respects. His "blacked out" condition seems to be a reference to his inability to remember what happened. Although the record is inadequate to show that the witness would have testified that, because of drug intoxication, the defendant was incapable of intending to steal, the colloquy with the judge discloses that the defendant wished to prove through the witness that the defendant "was incapable of forming the specific intent [and] that he in fact did not form the specific intent."

Although normally we would be reluctant to foreclose appellate argument on an evidentiary question where the judge excluded evidence and restricted counsel's attempt to explain his position and to make an offer of proof, that is not the case here. The judge invited an offer of proof. The psychiatrist's previous testimony had indicated that the defendant was unable to control his actions because of his craving for drugs. The implication is that the defendant knew what he was doing and intended to do what he did. The only sense in which it appears that the defendant did not intend to do what he did is that he suffered from an overpowering lack of self-control. If, contrary to this proffered testimony, the intended expert evidence was that, because of his mental condition, he was incapable of forming an intent to steal, the offer of proof in the course of the voir dire should have so indicated.

We conclude that the issue of the effect of drug consumption on the defendant's capacity to intend to steal

has not been presented on an appropriate record. See *Commonwealth* v. *Johnson,* 374 Mass. 453, 463-464 (1978). Our rule that the voluntary consumption of alcohol itself cannot warrant a finding of the absence of a specific criminal intent is of long standing. See, e.g., *Commonwealth* v. *Stewart,* 359 Mass. 671, 679 (1971) (upholding instruction that "you cannot find the absence of a specific intent solely because you find drunkenness"), judgment vacated per curiam as to death penalty, 408 U.S. 845 (1972); *Commonwealth* v. *LePage,* 352 Mass. 403, 419-420 (1967); *Commonwealth* v. *Farrell,* 322 Mass. 606, 621 (1948); *Commonwealth* v. *Taylor,* 263 Mass. 356, 361-363 (1928); *Commonwealth* v. *Gleason,* 262 Mass. 185, 191 (1928); *Commonwealth* v. *Malone,* 114 Mass. 295, 298 (1873); *Commonwealth* v. *Hawkins,* 3 Gray 463, 466 (1855).[8] The law in most jurisdictions is to the contrary, although the rules concerning the effect of consumption of drugs on criminal intent differ somewhat from jurisdiction to jurisdiction.[9] If we were to modify our rule which

[8] This rule has its origin in *Commonwealth* v. *Hawkins,* 3 Gray 463, 466 (1855), where Chief Justice Shaw instructed the jury as follows: "The rule of law is, that although the use of intoxicating liquors does to some extent blind the reason and exasperate the passions, yet, as a man voluntarily brings it upon himself, he cannot use it as an excuse or justification or extenuation of crime. A man, because he is intoxicated, is not deprived of any legal advantage or protection; but he cannot avail himself of his intoxication to exempt him from any legal responsibility, which would attach to him, if sober." This instruction blends considerations of lack of criminal responsibility with considerations of lack of criminal intent. The issue at trial was whether the consumption of alcohol could be considered in assessing whether there was provocation justifying a manslaughter verdict. The jury returned a manslaughter verdict. Our subsequent opinions, without much discussion, have accepted this dictum as adequate for rejecting both claims of lack of criminal responsibility and claims of lack of criminal intent. In this opinion, we have analyzed the two concepts separately.

[9] Opinions elsewhere recognize some form of an "exculpatory rule," which permits evidence of intoxication to negate specific intent. See, e.g., *United States* v. *Hartfield,* 513 F.2d 254, 259 (9th Cir. 1975); Annot., 8 A.L.R.3d 1236, 1246-1257 (1966). The rule in some jurisdictions is that intoxication may be considered in determining whether

discounts, perhaps fully, the effects of the voluntary consumption of drugs on a defendant's criminal intent, we would do so only where there was a clear indication of the influence of drugs on the defendant's state of mind. We would consider the question of criminal intent apart from the question of criminal responsibility under the McHoul test. We would want to consider also whether criminal intent sufficient to prove the crime charged could be found wanting in a situation, such as this, where the defendant, on any objective standard, was plainly seeking to steal certain designated property. Indeed, even on a subjective standard, the evidence indicates that the defendant intended to take the drugs. His demand for "Class A and B drugs" shows that the defendant's own thought processes, even if uncontrollable, were focused on taking the drugs.

The defendant argues that the exclusion of the offered evidence concerning his criminal intent is a denial of due process. He also claims that, because our law admits evidence of intoxication on the question of deliberate premeditation in a first degree murder case (see *Commonwealth* v. *Johnson*, 374 Mass. 453, 462-463 [1978], and cases cited), it is unfair and inconsistent to exclude such evidence on the question of specific intent.

We have already noted the inadequacy of the defendant's offer of proof on the question of his lack of intent to steal. In such a situation, no question involving a constitutionally unfair exclusion of evidence is presented. As to the claim that our law discriminates between intoxication as it may bear on deliberate premeditation in a mur-

the defendant had the specific intent. See, e.g., *People* v. *Crittle*, 390 Mich. 367, 374 (1973). Other jurisdictions require the intoxication to have been so severe as to have rendered the defendant incapable of forming the specific intent. See, e.g., *State* v. *Dante*, 25 Ariz. App. 150, 153 (1975); *State* v. *Scales*, 28 N.C. App. 509, 513 (1976). See also Model Penal Code § 2.08(1) (Proposed Official Draft 1962), which recognizes intoxication as a "defense" where "it negatives an element of the offense."

der case and intoxication as it may bear on a specific intent to commit another crime, on this record we need not pass on the point (see *Commonwealth* v. *Johnson, supra* at 463-465), but we note that the two circumstances are not identical because deliberate premeditation involves more than simply an intent to kill. See *Commonwealth* v. *McInerney*, 373 Mass. 136, 153-154 (1977); *Commonwealth* v. *Caine*, 366 Mass. 366, 374 (1974).

3. We need discuss only one of the other contentions advanced by the defendant. We accept the Appeals Court opinion on all other issues.

The judge properly declined to give the defendant's requested instruction that evidence that the "defendant acted while in a state of intoxication or under the influence of drugs or both is to be considered in determining whether or not the defendant acted with specific intent." Even if we were disposed to change our rule, we would recognize the consequences of the voluntary consumption of drugs only as they bear on the defendant's capacity to form a criminal intent. Evidence of the effect of drugs would be relevant on the issue of intent only where a defendant's intoxication or drug addiction reached a level at which he lacked the substantial capacity to form a specific intent. The requested charge was not framed in these terms.

In summary, we say that where proof of the defendant's intent to perform a particular act is an essential element of the crime, the Commonwealth, of course, must prove that intent beyond a reasonable doubt. We leave open the possibility that a defendant may be entitled to introduce expert testimony that, in particular circumstances, he lacked the substantial capacity to form the requisite specific intent because of the consequences of his voluntary consumption of drugs. Such evidence bears on the question whether the crime was committed and not on any claim of a lack of, or reduction in the degree of, the defendant's criminal responsibility.

*Judgment of the Superior Court*
*Department affirmed.*