COMMONWEALTH *vs.* JOHN J. BRENNAN.

Essex. November 4, 1986. — March 9, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Insanity. Intoxication. Intent. Evidence,* Sanity. *Practice, Criminal,* Instructions to jury.

It was error requiring reversal for the judge at a murder trial to exclude, as bearing on the issue of the defendant's criminal responsibility, the proffered expert opinion of a psychiatrist that the defendant suffered from an organic brain syndrome, the effects of which were triggered by his consumption of alcohol, and that, as a result of this brain syndrome, the defendant lacked substantial capacity at the time of the killing to appreciate the wrongfulness of his conduct and could not conform his conduct to that required by law. [361-363] HENNESSEY, C.J., concurring.

Failure of the Commonwealth to produce expert testimony as to a criminal defendant's sanity would not require reversal of his conviction. [364]

At a murder trial the judge did not err in instructing the jury that they could properly infer that the defendant intended to kill the victim if they found beyond a reasonable doubt that he killed her by the intentional use of a deadly weapon. [364]

INDICTMENTS found and returned in the Superior Court Department on August 3, 1981.

The cases were tried before *Charles R. Alberti,* J.

*Albert S. Previte, Jr.,* for the defendant.

*Edward F. Connelly,* Special Assistant District Attorney, for the Commonwealth.

The defendant, pro se, submitted a brief.

LYNCH, J. After a jury trial in the Superior Court, the defendant was found guilty of murder in the first degree, unlawfully carrying a firearm, and possessing a firearm with a defaced serial number. The defendant filed timely appeals of all three convictions. Here, however, he raises issues only in relation to the murder conviction and regarding criminal responsibility.

Thus, he waives appeal on the other indictments. He also seeks relief under G. L. c. 278, § 33E (1984 ed.). We reverse his murder conviction.

The defendant contends that the trial judge improperly excluded testimony of Dr. Maxwell N. Weisman, a psychiatrist, on the issue of the defendant's lack of criminal responsibility. He further contends that the failure of the Commonwealth to produce expert testimony of the defendant's criminal responsibility requires reversal. Finally, the defendant contends that, even in the absence of Dr. Weisman's testimony, there was enough evidence of his lack of criminal responsibility to require the judge to instruct the jury on that issue. In addition, the defendant claims, in his pro se brief, violations of his State and Federal constitutional rights.

On June 30, 1981, Brennan shot and killed his wife in the parking lot of the Stadium Lanes Bowling Alley in Lawrence. Prior to the incident, the defendant had learned that his wife had had an affair with another man. Earlier that month his wife obtained a restraining order against him and moved out of their home with their son. The defendant testified that he was depressed and upset and began drinking after eleven years of continuous sobriety. For the following three weeks he went on a binge of drinking and using drugs. On the morning of June 30, 1981, he drank beer, wine and a "couple dozen rum and cokes," took valium and smoked marihuana.

The defendant attempted to introduce the opinion of Dr. Weisman regarding the defendant's criminal responsibility pursuant to the standard as set out in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). Dr. Weisman is a psychiatrist who specializes in the field of alcoholism. On voir dire he testified that he had examined the defendant on two occasions for a total of five hours, and, in his opinion, the defendant was an alcoholic who probably had a genetic predisposition for alcoholism, but also that he had a mental disease or defect apart from the alcoholism. He diagnosed this condition, often seen in alcoholics, as organic brain syndrome, which he described as damage to the limbic system. He stated that the limbic system is the more primitive part of the brain which is related

Commonwealth *v.* Brennan.

to emotions and reactions and which can become irreversibly affected by the consumption of alcohol. He characterized organic brain syndrome as an "irreversible condition which cannot recover unless the individual stops drinking. Drinking will trigger off these reactions characteristic of a chronic brain syndrome. And it is my opinion that when Mr. Brennan was drinking, he showed all these reaction characteristics of this organic, physiological brain syndrome."

According to Dr. Weisman, the chronic organic brain syndrome existed before the defendant began his binge from about June 11 through June 30, 1981. His opinion was that because of the organic brain syndrome, the defendant lacked substantial capacity to appreciate the wrongfulness or criminality of his conduct on June 30, and could not conform his conduct to that required by law.

On cross-examination, Dr. Weisman stated that the characteristics of organic brain syndrome are disassociation, behavior inappropriate to one's age and maturity, disorientation, hallucinations and delusional activity. Dr. Weisman testified that he made his diagnosis of organic brain syndrome in relation to Brennan based on the history given to him by Brennan, and information contained in various reports provided to him.[1] The history revealed that when Brennan drank he displayed aberrant, unpredictable behavior, emotional reactions, and violence, none of which occurred when Brennan was not drinking. This indicated to Dr. Weisman that Brennan had organic brain syndrome.[2] Dr. Weisman testified that alcohol is almost always needed to trigger these symptoms and in the defendant's case he "never behaved that way when he wasn't drinking." Dr.

---

[1] Dr. Weisman obtained the following reports in relation to Brennan: evaluation made at Bridgewater State Hospital, August 8, 1981, by Dr. Wesley Proffit; evaluation, October 19, 1981, by Dr. John Whitehead and Dr. Proffit; another evaluation by Dr. Proffit, November 30, 1981; evaluation July 1, 1981, by Peter Mencher, M.D., chief psychiatrist, Greater Lawrence Mental Health Center, Lawrence; and police reports containing statements made by Brennan at the time of his arrest.

[2] Dr. Weisman testified that he did not have the benefit of computerized axial tomography (CAT scan) or an electroencephalogram (EEG), but that they would not necessarily show evidence of organic brain syndrome.

Weisman acknowledged that, if Brennan had not consumed alcohol on June 30, 1981, he would have been able to conform his conduct to the requirements of law.

The judge ruled that there was an insufficient foundation for him to admit Dr. Weisman's opinion regarding the defendant's criminal responsibility. He did, however, admit Dr. Weisman's opinion that, because of his intoxication on the day of the incident, the defendant lost his capacity to premeditate and was unable to make a decision in a normal manner.[3]

1. *Lack of criminal responsibility.* This court set out the standard for lack of criminal responsibility in *Commonwealth v. McHoul,* 352 Mass. 544, 546-547 (1967): "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." This court has stated that alcoholism is not a disease or defect that would trigger the application of *McHoul. Osborne v. Commonwealth,* 378 Mass. 104, 111-112 (1979). Similarly, voluntary intoxication cannot be used to excuse criminal conduct. See *Commonwealth v. Doucette,* 391 Mass. 443, 455 (1984); *Commonwealth v. Farrell,* 322 Mass. 606, 621 (1948). The jury may, however, consider the defendant's voluntary intoxication in determining whether the defendant murdered with extreme atrocity or cruelty, *Commonwealth v. Perry,* 385 Mass. 639, 648-649 (1982), or was capable of premeditation, *Doucette, supra* at 455. Cf. *Commonwealth v. Henson,* 394 Mass. 584, 593 (1985).

In *Commonwealth v. Sheehan,* 376 Mass. 765, 769-770 (1978), we recognized that there may be situations where a defense of lack of criminal responsibility under *McHoul, supra,* would be available to someone addicted to drugs. The court stated in *Sheehan, supra,* that a defendant should not be barred

---

[3] Defense counsel did not elicit testimony regarding organic brain syndrome in relation to premeditation or extreme atrocity or cruelty. Under *Commonwealth v. Gould,* 380 Mass. 672, 683-685 (1980), and *Commonwealth v. Perry,* 385 Mass. 639, 648-649 (1982), such evidence would have been admissible on that issue.

from asserting lack of criminal responsibility merely because he or she is an addict, if "as a result of a mental disease or defect, apart from his drug addiction, a defendant lacks substantial capacity to conform his conduct to the requirements of law." *Sheehan, supra* at 769. Additionally, we stated that where "the consumption of drugs causes a mental disease or defect, apart from drug addiction itself, normally the defendant may rely on that mental disease or defect in support of his assertion of his lack of criminal responsibility, even if the defendant's drug consumption was voluntary." *Id.* The court recognized, however, that a finding of lack of criminal responsibility is not warranted where the defendant voluntarily consumes drugs, knowing that the consumption will cause a mental disease or defect. *Sheehan, supra* at 770. *Sheehan* reiterated that the *McHoul* standard requires a causal connection between the mental disease or defect and the defendant's lack of capacity to appreciate the wrongfulness of conduct or to conform conduct to the requirements of law. *Commonwealth* v. *Sheehan, supra* at 770, citing *Commonwealth* v. *McGrath,* 358 Mass. 314, 320 (1970). If the defendant's lack of substantial capacity "is solely the product of his voluntary consumption of drugs, he does not meet the *McHoul* test, even if he has a mental disease or defect." *Id.* In *Sheehan,* we explicitly rejected "both drug addiction and the normal consequences of the consumption of drugs as a basis for a claim of lack of criminal responsibility." *Id.* at 772.

The defendant claims that he meets the *McHoul* and *Sheehan* standards and that Dr. Weisman's testimony should have been admitted; the Commonwealth claims that Brennan has merely presented evidence of the normal consequences of alcoholism which do not satisfy *McHoul* or *Sheehan.* We conclude that the testimony should have been admitted on the issue of criminal responsibility.

The expert's testimony would have warranted a finding that the defendant's mental disease or defect, organic brain syndrome, was the cause of his lack of criminal responsibility. Although Dr. Weisman was of the opinion that the defendant had the capacity to understand the nature of his conduct when

he did not consume alcohol, and that his conduct when alcohol-free is unaffected by the mental condition or defect, he was nevertheless of the opinion that the defendant suffered from an underlying disease or defect, apart from the alcoholism, which was the cause of his lack of criminal responsibility. The jury should have been permitted to hear this testimony.

In *Commonwealth* v. *Shelley,* 381 Mass. 340, 350 (1980), the court observed that the instruction given[4] "did not treat adequately the situation in which voluntary alcohol consumption unforeseeably activates a latent mental disease or defect unrelated to alcohol use." The *McGrath* instruction describes a case where the *intoxication,* not the disease or defect, is the cause of the defendant's lack of criminal responsibility. The court in *Shelley* suggested that if the jury finds that the defendant had a latent mental disease or defect which caused the defendant to lose the capacity to understand the wrongfulness of his conduct or to conform his conduct to the requirements of the law, lack of criminal responsibility is established even if voluntary consumption of alcohol activitated the illness, unless he knew or had reason to know that the alcohol would activate the illness. *Id.* We adopt that suggestion here. This rule does not eliminate the requirement that the lack of substantial capacity must arise from the underlying disease or defect rather than the voluntary consumption of alcohol.

2. Since there must be a new trial it is only necessary to discuss two other issues that may arise again.

---

[4] The instruction at issue in *Shelley, supra,* was given pursuant to *Commonwealth* v. *McGrath,* 358 Mass. 314 (1970). In *McGrath, supra* at 320, the court upheld the following instruction with regard to voluntary intoxication: "[I]f you find that [the defendant] had an underlying mental disease or illness but that despite such underlying mental disease he had the substantial capacity to appreciate the wrongfulness (criminality) of his conduct and had the substantial capacity to conform his conduct to the requirements of the law, and if you further find that, by reason of and because of his voluntary use of drugs or drugs and alcohol on the day of the crimes or the few days before the crimes, he lost his substantial capacity to appreciate the criminality of his conduct or the substantial capacity to conform his conduct to the requirements of law, you would then, having made all these findings, be warranted in returning verdicts of guilty against [the defendant] . . . ."

a. *Failure of Commonwealth to produce expert testimony of the defendant's sanity.* The defendant contends that the failure of the Commonwealth to produce expert testimony of his sanity requires reversal of his conviction. While the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant was sane at the time of the crime, *Commonwealth v. Kostka,* 370 Mass. 516, 527 (1976), there is an inference sometimes known as the "presumption of sanity" which ordinarily allows the jury to infer that the defendant is sane from their common knowledge that a great majority of people are sane, and the probability that any particular person is sane. *Id.* at 535-536, citing *Commonwealth v. Smith,* 357 Mass. 168, 179 (1970).

We have also held "that expert testimony is not necessary to prove a defendant sane beyond a reasonable doubt, even in the face of uncontradicted expert testimony that a defendant was insane under the standards of *Commonwealth v. McHoul, supra,* at the time of the crime." *Commonwealth v. Louraine,* 390 Mass. 28, 35 (1983). There was no error.

b. *Jury instructions.* The defendant also claims that the jury instructions impermissibly shifted the burden of proof and tended to characterize inferences as presumptions. The judge instructed that if the jury found beyond a reasonable doubt that the defendant killed his wife by the intentional use of a deadly weapon, "you may draw the *inference* that he intended to kill. You have a right to *infer* that he intended to bring about the natural and probable consequences of his act. It has long been recognized that malice *may be inferred.* And remember that word . . . you *infer;* and malice may be *inferred* from the intentional use of a deadly weapon. *You need not draw that inference. It is, however, for you to decide whether you do so"* (emphasis added). In the same discussion, the judge stated: "Some acts are so extremely dangerous that malice may be *inferred* . . . , that is *proof* of malice and you would be warranted in finding the defendant guilty of murder in the second degree." The instruction was correct in this regard and does not contain the infirmities of which the defendant complains.

For the reasons stated above, we reverse the judgment on the murder indictment, set aside the verdict, and remand the case to the Superior Court for a new trial. The judgments on the other indictments are affirmed.

*So ordered.*


HENNESSEY, C.J. (concurring). I agree with the result and the reasoning of the court, but I add a few words to emphasize that I concur because there was evidence here that the defendant suffered from a mental disease or defect within the meaning of the *McHoul* rule. In other cases, I have departed from the court's reasoning where the court, in my opinion, adopted and applied the principle of partial responsibility or diminished capacity where there was no such mental disease or defect. See *Commonwealth* v. *Gould,* 380 Mass. 672, 691-693 (1980) (Quirico, J., dissenting, with whom Hennessey, C.J., joins); *Commonwealth* v. *Henson,* 394 Mass. 584, 594 (1985) (Hennessey, C.J., concurring). I have expressed particular objection that a defendant's voluntary ingestion of alcohol or illegal drugs might serve to mitigate or excuse his otherwise criminal conduct. *Henson, supra* at 594. In this case, although voluntary use of alcohol may have been a precipitating factor, the jury could permissibly find on the evidence that the underlying cause of the defendant's aberrant conduct was a latent mental disease or defect within the *McHoul* definition. From that point, it is not unreasonable to put to the jury the issue whether the defendant drank alcohol knowing that it would act, together with his latent disease, to cause his violent conduct. See *Commonwealth* v. *Sheehan,* 376 Mass. 765, 769-771 (1978).