COMMONWEALTH vs. ANTHONY ANGELONE.

Essex. April 6, 1992. - July 9, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Assault with Intent to Murder. Intoxication. Intent. Insanity. Practice, Criminal*, Instructions to jury.

At the trial of indictments for armed assault with intent to murder and assault and battery by means of a dangerous weapon, a knife, in which the defendant raised the defense of lack of criminal responsibility on account of a seizure, at the time of the stabbing, caused by a mental disease known as temporal lobe epilepsy, the judge should have granted the defendant's request for a jury instruction, based on expert testimony and other evidence, that they could consider the effects of any epileptic seizure that the defendant may have had on the issue of his criminal responsibility even if the seizure was induced by the defendant's drug consumption. [87-88] LYNCH, J., dissenting, with whom NOLAN, J., joined.

INDICTMENT found and returned in the Superior Court Department on April 12, 1989.

The case was tried before *John T. Ronan, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael F. Natola* for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was convicted of armed assault with intent to murder and of assault and battery by means of a dangerous weapon, a knife. At his jury trial the defendant did not deny that he had stabbed the victim. His general defense was that he lacked criminal responsibility because, at the time of the stabbing, he was experiencing a seizure caused by a mental disease known as temporal lobe epilepsy. As to the charge of armed assault with intent to murder, the

defendant additionally argued that, because of his consumption of alcohol and other drugs and the seizure caused by his temporal lobe epilepsy, he did not intend to murder the victim.

The judge charged the jury concerning the lack of criminal responsibility pursuant to *Commonwealth* v. *McHoul*, 352 Mass. 544 (1967), and also instructed the jury that they could consider the defendant's consumption of alcohol and other drugs in determining whether the Commonwealth had proved the defendant's specific intent to murder (see *Commonwealth* v. *Henson*, 394 Mass. 584, 593 [1985]). Based on expert testimony that his consumption of drugs could have caused an epileptic seizure and that the consumption of drugs would lower the seizure threshold of a person with temporal lobe epilepsy, the defendant requested that the judge instruct the jury in effect that the fact that the seizure may have been activated by the defendant's consumption of drugs, including alcohol, made no difference, in the circumstances, in deciding whether the defendant lacked criminal responsibility. The judge declined to give such an instruction.[1]

On appeal, in an unpublished memorandum and order, 31 Mass. App. Ct. 1113 (1991), the Appeals Court implicitly acknowledged the soundness of the principle on which the requested instruction was based but concluded that the instruction was not required because, on the evidence, the principle was not applicable. In affirming the convictions, the Appeals

---

[1]The specific charge requested, and the authority cited in support of it, are as follows: "Intoxication with alcohol or drugs or a combination thereof is not by itself a mental disease or defect that would warrant a verdict of not guilty by reason of lack of criminal responsibility. However, a person's consumption of alcohol or drugs or both may activate a latent mental disease or defect, apart from the intoxication itself. Such a latent mental disease or defect, once activated, may properly be the basis for a verdict of not guilty by reason of lack of criminal responsibility, unless the Commonwealth proves beyond a reasonable doubt that the defendant knew or had reason to know that the alcohol and/or drugs would activate that disease or defect. *Commonwealth* v. *Brennan*, 399 Mass. 358 (1987); *Commonwealth* v. *Doucette*, 391 Mass. 443 (1984); *Commonwealth* v. *McGrath*, 358 Mass. 314 (1970)."

Court concluded that "[t]here was no evidence from the defendant's expert or anywhere else in this record that the defendant's voluntary consumption of alcohol and drugs activated a latent mental defect at the time of the crime, resulting in the defendant's lack of criminal responsibility. He was entitled to no more than the *McHoul* instruction — which he received."[2]

We granted the defendant's application for further appellate review to assess his claim that there was evidence that the defendant's consumption of drugs activated his mental disease and caused his seizure. We agree with the defendant that the record contains (a) evidence of his consumption of drugs, including alcohol, prior to the stabbing of the victim and (b) expert testimony that the consumption of drugs lowers the threshold for incurring an epileptic seizure of a person who has temporal lobe epilepsy. We conclude that the judge committed prejudicial error in failing to give an instruction substantially consistent with the defendant's request.

The legal principles involved are not disputed or complicated. The prosecution has the burden, when the evidence raises the issue, to prove beyond a reasonable doubt that the defendant was criminally responsible for his conduct. It must, therefore, prove beyond a reasonable doubt, pursuant to the *McHoul* standard, that the defendant did not lack the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law as a result of a mental disease or defect. It is well established that intoxication caused by the voluntary consumption of alcohol or another drug cannot be a basis for a finding that a defendant lacked criminal responsibility. See *Commonwealth v. Farrell*, 322 Mass. 606, 621 (1948). Nor is alcoholism a mental disease or defect for the purposes of the *McHoul* rule. See *Osborne v. Commonwealth*, 378 Mass. 104, 111

---

[2]Nothing is made before us of the fact that the Appeals Court, in its ultimate conclusion, referred only to a mental defect and not also to a mental disease.

(1979). See also *Commonwealth* v. *Sheehan*, 376 Mass. 765, 772 (1978) (drug addiction and normal consequences of consumption of drugs cannot be basis for claim of lack of criminal responsibility). There may, of course, be an interrelationship between the consumption of drugs, including alcohol, and a mental disease or defect. This court discussed that subject in dicta in *Commonwealth* v. *Sheehan, supra* at 769-770, and in *Commonwealth* v. *Shelley*, 381 Mass. 340, 350 (1980). In *Commonwealth* v. *Brennan*, 399 Mass. 358 (1987), the court adopted the rule that, if a "defendant had a latent mental disease or defect which caused the defendant to lose the capacity to understand the wrongfulness of his conduct or to conform his conduct to the requirements of the law, lack of criminal responsibility is established even if voluntary consumption of alcohol activated the illness, unless he knew or had reason to know that the alcohol would activate the illness." *Id.* at 363. The defendant relied on this principle in requesting the jury instruction that we consider in this appeal.[3]

There was considerable evidence that the defendant had consumed substantial amounts of alcohol and other drugs immediately prior to the stabbing, which occurred outside a church in Lynn where a regular meeting of a narcotics anonymous group was being held. Evidence from people who attended the meeting tended to show that the defendant and the victim exchanged words at the meeting, that the defendant appeared to be under the influence of one or more drugs, and that the stabbing occurred when the victim left the

---

[3]One of the problems in charging a jury on the *McHoul* standard, and on the standard stated in the *Brennan* opinion, is that, because of the risk of burden shifting in the use of "finding" language, a judge must state the rule in terms of the Commonwealth's burden to prove criminal responsibility beyond a reasonable doubt and not that the jury must find whether the defendant lacked criminal responsibility. The judge met the challenge here well enough, although acknowledging the difficulty a jury can have with such a formulation. This court has not been wholly free itself from using language that suggests the jury be instructed that they must find whether the defendant lacked criminal responsibility. See *Commonwealth* v. *Brennan*, 399 Mass. 358, 362, 363 (1987).

meeting and the defendant followed him. Evidence from the defendant's wife, who attended the meeting, and from a friend who was with the defendant at the defendant's home immediately prior to the meeting, indicated that the defendant was extremely intoxicated at home. His wife testified that at the meeting the defendant was intoxicated and "was not making a lot of sense."

Dr. David E. Rosengard testified for the defendant. He said that the defendant had a disease known as temporal lobe epilepsy, which causes seizures that can last from a few seconds to a few hours. During such a seizure, a person is unconscious ("in a fog"), but may appear conscious. Based on his examination of the defendant and the defendant's medical history, the doctor concluded that, as a result of a mental disease or defect, the defendant lacked the substantial capacity at the time of the stabbing to appreciate the wrongfulness of his actions and to conform his conduct to the requirements of law. The doctor further testified that the defendant "had an underlying low seizure threshold by drinking so much and taking so many drugs . . . In other words, the amount of energy required to produce one of these seizures was low and initiated more quickly by taking all the drugs and the alcohol." He testified later that the defendant's chronic consumption of alcohol and drugs made the defendant's temporal lobe epilepsy worse and that one drink of an alcoholic beverage had a much greater effect on the defendant than on an average person.

From the evidence we have summarized, the jury would have been warranted in deciding that there was a reasonable doubt concerning the defendant's criminal responsibility because, at the time of the stabbing, the defendant may have sustained a seizure caused by a mental disease. It also would have been permissible for the jury to conclude that the defendant's drug consumption caused the seizure. By the requested instruction, the defendant sought to have the jury advised, in effect, that it did not matter that the defendant's drug consumption triggered a seizure, unless, if the drug consumption triggered the seizure, the Commonwealth then

proved beyond a reasonable doubt that the defendant knew or had reason to know his drug consumption would do so.

The judge should have instructed the jury that, in deciding whether the Commonwealth had proved that the defendant was criminally responsible, they could consider any effects of his consumption of drugs, including alcohol, on his state of mind. *Commonwealth* v. *Brennan*, 399 Mass. 358, 363 (1987). The judge properly instructed the jury that they could consider the effects of the defendant's drug consumption in determining whether the Commonwealth had proved the defendant's specific intent to murder the victim. He did not, however, also instruct the jury that they could consider the effects of the defendant's consumption of drugs on any manifestation of a mental disease or defect and on the defendant's substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. See *Commonwealth* v. *McHoul*, 352 Mass. 544, 547 (1967). This omission presented the possibility that the jury would conclude that they should not consider the effects of drug consumption in passing on the defendant's insanity defense.

The defendant's major defense, applicable to both charges, was that he had a mental disease or defect and, as a result, lacked the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. The defendant's evidence tended to show that his drug consumption caused the epileptic seizure that allegedly existed at the time of the attack on the victim. In the circumstances, the requested instruction dealt with a significant dispute in the trial. The jury should have been told that they could consider the effects of any epileptic seizure that the defendant may have had even if induced by the defendant's drug consumption.[4] This is not a case where the judge

---

[4]Consistent with the instruction requested, in some other case such an instruction might have to include an exception if the defendant knew or reasonably should have known of the effect of his drug consumption on his mental disease or defect. In this case, the issue was not presented by the evidence. The prosecution did not claim that the defendant knew or rea-

could properly decline to instruct the jury on how it should treat one aspect of the evidence. The subject was too important to ignore. There was a real danger that the jury would assume that the principles of the *McHoul* case do not apply to a person whose mental disease or defect was triggered or aggravated by his voluntary consumption of drugs. It is not enough that the judge did not improperly tell the jury to disregard the effects of the defendant's consumption of drugs in deciding whether the Commonwealth had proved his criminal responsibility. He had an affirmative obligation to instruct on this central issue in the case when requested to do so.

The judge's failure to give the requested instruction was reversible error. The defendant is entitled to a new trial.

*Judgments reversed.*

*Verdicts set aside.*

LYNCH, J. (dissenting, with whom Nolan, J., joins). The court concludes that the judge's charge "presented the possibility that the jury would conclude that they should not consider the effects of drug consumption in passing on the defendant's insanity defense," *ante* at 87, and that "[t]here was a real danger that the jury would assume that the principles of the *McHoul* case do not apply to a person whose mental disease or defect was triggered or aggravated by his voluntary consumption of drugs." I do not agree. There was nothing in the judge's charge that would have led the jury to believe that the connection between the epileptic seizure and the defendant's use of alcohol or drugs made any difference.

As the court concedes, the judge correctly charged on lack of criminal responsibility, *Commonwealth* v. *McHoul*, 352 Mass. 544 (1967), and the effect of alcohol and drugs on the

sonably should have known that his consumption of drugs would trigger a manifestation of any disease. There was no evidence that the defendant knew or reasonably should have known that he had a mental disease or that his drug consumption would cause a seizure.

defendant's mental condition as it related to the required specific intent. *Commonwealth* v. *Henson,* 394 Mass. 584 (1985). That was all that was required. The defense did not contend that the defendant's epilepsy was "triggered" by the consumption of alcohol and drugs, but rather that he was more susceptible to epileptic seizure because of his consumption of alcohol and drugs. Neither did the prosecutor argue that the defendant's impaired mental condition should be ignored because it may have been exacerbated by the consumption of alcohol and drugs. The requested instruction was not required, therefore, because it negates a proposition that was not put before the jury by either the Commonwealth or the defense. The defendant requested that the jury be instructed that "a person's consumption of alcohol or drugs or both may *activate a latent mental disease or defect,* apart from the intoxication itself. Such a latent mental disease or defect, once activated, may properly be the basis for a verdict of not guilty by reason of lack of criminal responsibility . . . ." (Emphasis supplied.) The defendant's expert did not testify that the defendant's reduced mental capacity at the time the crime was committed was activated or triggered by the consumption of drugs or alcohol, but only that he was more susceptible to epileptic seizures because of such consumption.

There was no evidence from the defendant's expert or anywhere else in the record that the defendant's voluntary consumption of alcohol and drugs activated a latent mental defect at the time of the crime, resulting in the defendant's lack of criminal responsibility. He was entitled to no more than the instructions he received.