Connolly, J.
INTRODUCTION
This matter is before the court on defendant Timothy Foster’s motions filed pursuant to Mass.R.Crim.P. 30(a) and (b). He claims as grounds, inter alia, that his sentence was illegal and that he received ineffective assistance of counsel.
BACKGROUND
On March 30, 1995, Foster was driving a pickup truck on Rt. 118 in Attleboro on Friday, March 30, 1995 around 4:30 P.M., near the La Salette Shrine. The posted speed limit is 35 M.P.H. The roadway has a double yellow line which is solid. The defendant was heading northbound in a Nissan pick-up truck, which was unregistered, uninsured and unlawfully had attached a stolen plate to it. The defendant was intoxicated, and was found to have a blood alcohol level of .302 at Sturdy Hospital immediately after the accident. Foster drove into the southbound lane, and struck head-on an automobile operated by the victim, Marilia Raposo.
The defendant, as shown by an accident recon-structionist, was driving, at a minimum, 56 MPH in the 35 MPH zone. Witnesses could testify as to having observed the collision itself. Another witness observed the defendant’s erratic and negligent, even reckless driving for some distance before the accident occurred. The victim and the defendant sustained serious medical injuries.
Defendant was indicted of seven charges.[1] This court accepted guilty pleas from Foster to all indictments, including the indictment numbered 36502, alleging a violation of G.L.c. 90, §24L(1), operating negligently so as to endanger causing serious bodily harm to the victim. Foster was sentenced to Cedar Junction for a term of not less than nine, nor more than ten years for the indictment no. 36502. He was also sentenced to three other terms of confinement, all running concurrent to the sentence of nine to ten years.[2] The remaining three indictments were placed on file.
Foster now moves for release from unlawful restraint or, in the alternative, for withdrawal of his guilty plea and for a new trial.
DISCUSSION
1. Motion pursuant to Rule 30(a) to correct an illegal sentence.
Foster pleaded guilty to each indictment inquired of him at the disposition, including no. 36502, alleging a violation M.G.L.c. 90, §24L(1), operating negligently so as to endanger causing serious bodily harm, a felony offense punishable by a sentence of up to ten years. Foster now claims that he de facto pleaded guilty to section (2) of G.L.c. 90, §24L, which constitutes a lesser included offense the section (1) charge, because he did not plead guilty to the element of negligence required under Section (1). Since Foster has already served the maximum sentence allowed under Section (2) of two and one-half years, Foster contends, his sentence on indictment no. 36502 must be vacated, and he must be resentenced and released from custody.
Mass.R.Crim.R 30(a) permits a person who is imprisoned to file a written motion requesting the trial judge to release him or correct the sentence in violation of the Constitution or laws of the United States or the Commonwealth. See Mass.R.Crim.P. 30(a). “An illegal sentence is one that is not permitted by law for the offense committed.” Commonwealth v. McGuinness, 421 Mass. 472, 475 (1995) (internal citations omitted).
By asserting that he in fact pleaded guilty to a lesser included charge, Foster in essence claims that his plea to G.L.c. 90, §24L(1) was not valid because his plea to that charge was not intelligent and voluntary. The United States Supreme Court has held that a guilty plea is not a voluntary and intelligent admission of guilt where a defendant lacks a complete understanding of an essential element of the crime and there is insufficient notice of the crime or there is not proof that the defendant understands the charge. See Henderson v. Morgan, 426 U.S. 637, 646 (1976). The Supreme Judicial Court has found that, under Henderson, a guilty plea is not involuntary where the record demonstrates either: “(1) an explanation by the judge of the elements of the crime: or (2) a representation that counsel has explained to the defendant the *238 elements he admits by his plea; or (3) defendant’s statements admitting facts constituting the unexplained elements.” Commonwealth v. Colantoni, 396 Mass. 672, 679 (1986). Furthermore, “[t]he defendant’s affirmative response to the facts as stated by another, if those facts contain the necessary elements of the crime, is sufficient to satisfy the Henderson test.” Id.; see also Commonwealth v. Swift, 382 Mass. 78, 84 (1980).
Foster’s contention that his guilty plea to the more serious charge of G.L.c. 90 §24L(1) was not valid lacks support in the record because the record shows rather, that Foster had notice and that he admitted to the facts recited by the Commonwealth. First, Foster had notice of the elements of G.L.c. 90, §24L(1) from the indictment itself: indictment no. 36502 clearly charges that Foster “did operate a motor vehicle . . . negligently so that the lives and safety of the public might be endangered, and by such operation so described did cause serious bodily injury to Marilia Raposo.” Exhibit A, p. 1. Foster’s counsel and Foster had ample opportunity to review the indictments and the elements set out therein.[3]
More importantly, the record reflects that the assistant district attorney clearly stated the necessary legal element of negligence during his sentence recommendation, and it shows that he stated the facts constituting negligent behavior when asked to do so by the court. Foster unequivocally admitted to all the facts as recited by the prosecutor.
The record shows that assistant district attorney stated: “[o]n indictment #36502, the indictment which charges OUI plus negligence resulting in serious bodily injury, the Commonwealth recommending a sentence of not less than nine, nor more than ten years committed, to be served at the State Prison at Cedar Junction.” Transcript of Plea, p. 8, 1.21 to p. 9, 1.3. Assistant District Attorney Connelly then “set forth the facts which form the basis of the indictments in this case” reflected in the Transcript of Plea, at p. 11, 1.15 to p. 16, 1.3. Therein, the assistant district attorney recited the facts about the accident, including that the defendant was driving an unregistered, uninsured vehicle with an unlawfully attached, stolen plate. The defendant was intoxicated, having been found to have a blood alcohol level of .302 at Sturdy Hospital immediately after the accident. Foster, headed northbound, drove into the southbound lane, and struck an automobile head-on operated by Marilia Raposo at a minimum speed of 56 MPH in a 35 MPH zone. Witnesses were present at the disposition who could have testified as to having observed the collision itself, to the defendant’s erratic and negligent, even reckless driving for some distance before the accident occurred. See Tr. of Plea, p. 12, 1.23 to p. 16, 1.2. Obviously, the set of facts recited by the Commonwealth at the plea hearing is replete with evidence constituting negligence.
Prior to the Commonwealth setting forth the facts, the court cautioned the defendant “to listen very carefully to the facts as recited by the assistant district attorney. At the end of the recitation of the facts, I will ask you, sir, whether you agree with the facts as recited by our assistant district attorney and whether they are in fact true.” Tr. of Plea, p. 11, 1.15 to 1.25. After the Commonwealth presented the facts, the court held a colloquy with Foster in which Foster acknowledged the facts as recounted by the assistant district attorney were true as stated.[4] The defendant further stated that he was pleading guilty because he was guilty and for no other reason. Tr. of Plea, p. 18, 1.11-14.
Using the rationale from Colantoni and Swift, Foster’s admission to facts stated by the assistant district attorney here was sufficient to satisfy the Henderson requirements for a voluntary and intelligent guilty plea to G.L.c. 90, §24L(1). See Colantoni, 396 Mass. at 679; Swift, 382 Mass. at 84. The guilty plea to the charge of G.L.c. 90, §24L(1) is, therefore, valid. Because the sentence of nine to ten years is a permissible one under G.L.c. 90, §24L(1), no illegal sentence has been imposed and Foster’s challenge on these grounds fails.
2. Motion to withdraw Plea and for a new trial on grounds of ineffective assistance of counsel.
Foster moves to withdraw his guilty plea and for a new trial on the basis that he received ineffective assistance of counsel when he tendered his plea.
A motion pursuant to 30(b) for a new trial is a proper way to challenge a guilty plea. See Commonwealth v. DeMarco, 387 Mass. 481, 482 (1982). Upon motion, the trial judge may grant a new trial at any time if it appears that justice may not have been done. See Mass.R.Crim.P. 30(b). The standard is purposely broad and the disposition of a “motion for new trial is addressed to the sound discretion of the judge.” Commonwealth v. Moore, 408 Mass. 117, 125 (1990); see also Commonwealth v. Schand, 420 Mass. 783, 787 (1995). Furthermore, “the judge’s disposition of the motion will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error.” Schand, 420 Mass. at 787 (citations omitted).
A party moving for a new trial and the opposing party may file affidavits in support of their respective position. It is within the court’s discretion to decide the motion “on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits.” Mass.R.Crim.P. 30(c)(3). See also Commonwealth v. DeVincent, 421 Mass. 64, 67 (1995) (stating that the judge must determine whether the motion or affidavits have raised a “substantial issue” that would require an evidentiary hearing); Commonwealth v. Carver, 33 Mass.App.Ct. 378, 380-81 (1992) (a motion judge may rule on issues raised by a new trial motion without a *239 hearing if no new substantial issue is raised by the motions or affidavits).
Foster claims that an error of constitutional magnitude occurred because he was denied effective assistance of counsel in the tendering of his guilty plea. In order to support a claim of ineffective assistance of counsel, the defendant must show serious incompetency, inefficiency or inattention of counsel falling “measurably below that which might be expected from an ordinary fallible lawyer” and that such inadequacies “likely deprived [the defendant] of an otherwise available, substantial ground of defence.” Commonwealth v. Clarke, 44 Mass.App.Ct. 502, 512 (1998), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). To succeed on a claim for ineffective assistance of counsel, the defendant must show that better work by trial counsel might have accomplished something material for the defense. See Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). “Decisions regarding strategic or tactical matters are ultimately left to counsel, with the degree of required client consultation and participation dependent on the circumstances.” Clarke, 44 Mass.App.Ct. at 512 (internal quotations omitted). In cases where the tactical decisions are challenged, a defendant must demonstrate that the judgment was “manifestly unreasonable.” Id.
Foster submits that he received ineffective assistance of counsel in three ways. First, Foster faults his lawyer in that he failed to investigate and apprise the court of a valid mental state claim. Second, he claims that his counsel failed to file a motion to dismiss for noncompliance with G.L.c. 90, §2, which Foster asserts would have constituted a valid defense. He also claims that he was not given effective assistance during the sentencing hearing, claiming that his attorney abandoned him at the sentencing hearing by failing to effectively advocate on his behalf. None of these grounds is sufficient to support an ineffective assistance of counsel claim.
(a.) Failure to investigate mental health claim.
Foster asserts that his attorney failed to investigate any of Foster’s claims of prior mental health problems and substance abuse problems. Specifically, Foster claims that his counsel failed to contact any hospitals that had previously provided treatment, and thus failed to discover Foster’s history of substance abuse problems and of “several mental disorders, which include Depression, Dysthymia, which are recognized mental health defects, possible Fetal Alcohol Syndrome, and Adult Brain Dysfunction.” Additionally, Foster claims that he was taking a prescribed medication for an ankle injury he sustained before the accident.
“[A] failure by trial counsel to investiga .e a mental state claim can constitute ineffective assistance, if facts known, or reasonably accessible, to counsel could raise a reasonable doubt about a defendant’s mental condition.” Commonwealth v. Gould, 413 Mass. 707, 711 (1992). An ineffective assistance of counsel claim may fail if not sufficiently supported by facts showing that the mental state claim should have been investigated. See id.; Commonwealth v. Doucette, 391 Mass. 443, 459 (1984).
Foster points to several reports from different hospitals dating back to 1981 that describe extensive troubles with alcohol and drugs. The reports submitted by the defendant from Fuller Memorial Hospital, Taunton State Hospital, Sturdy Memorial Hospital, Good Hope Center, and Southwood Hospital demonstrate a long and pervasive history of drug and alcohol abuse that has included many overdoses resulting in hospitalizations. See Exhibit U. However, “[i]t is well established that intoxication caused by the voluntary consumption of alcohol or another drug cannot be a basis for a finding that a defendant lacked criminal responsibility. Nor is alcoholism a mental disease or defect for the purposes of the [Commonwealth v.] McHoul, [352 Mass. 544 (1967)] rule." Commonwealth v. Angelone, 413 Mass. 82, 84 (1992) (internal citations omitted). “There may, of course, be an interrelationship between the consumption of drugs, including alcohol, and a mental disease or defect.” Id. at 85. Massachusetts courts have accepted the rule that if a:
defendant had a latent mental disease or defect which caused the defendant to lose the capacity to understand the wrongfulness of his conduct or to conform his conduct to the requirements of the law, lack of criminal responsibility is established even if voluntary consumption of alcohol activated the illness, unless he knew or had reason to know that the alcohol would activate the illness.
Id. (quoting Commonwealth v. Brennan, 399 Mass. 358, 363 (1987)).
Foster attempts to assert that he had a mental disease or defect vis-a-vis depression, dysthymia,[5] possible fetal alcohol syndrome, and adult brain dysfunction. Foster has submitted reports from various treatment centers and hospitals over a fourteen-year period, in which many staff persons use those terms to characterize Foster’s mental health. However, Foster fails to explain how any of these alleged mental defects could have caused him to lack the capacity to appreciate the wrongfulness of his conduct while he was driving intoxicated. Furthermore, Foster’s argument fails under the standard articulated by the Supreme Judicial Court in Angelone regarding the establishment of a lack of criminal responsibility due to the activation of some latent mental defect by a voluntary consumption of alcohol because it is quite clear from the substantial medical records submitted and after five prosecutions for driving under the influence that Foster knew or had reason to know that alcohol caused the latent defects, if he had any, to surface.[6]
Foster also asserts that he was taking prescribed medication, Darvol, at the time of the accident. Pre *240 sumably, he asserts that this contributed to his intoxicated state. He does not assert that he was unaware of the intoxicating affect of Darvol. Whether or not Darvol made a contribution to his intoxicated state is of no consequence. Massachusetts courts have found that a conviction for driving while under the influence of intoxication liquor is permissible “if the defendant’s ability to operate a vehicle safely is diminished, and alcohol is one contributing cause of the diminished capacity. It is not necessary that alcohol be the sole or exclusive cause. It is enough if the defendant’s capacity to operate a motor vehicle is diminished because of alcohol, even though other, concurrent causes contribute to the diminished capacity.” Commonwealth v. Stathopoulos, 401 Mass. 453, 457 (1988). According to the toxicology report submitted by Foster, his blood serum alcohol concentration at about 6 p.m., or about one and a half hours after the accident, was more than three times the legal limit for the operation of a motor vehicle in Massachusetts.
This court concludes that counsel's knowledge of facts concerning Foster’s alleged mental health conditions from treatment records or Foster’s use of a prescription medication at the time of the accident could not have raised a reasonable doubt about Foster’s mental condition. See Gould, 413 Mass. at 711.
(b.) Failure to file a motion to dismiss.
Foster also claims that the failure by his attorney to file a motion to dismiss for noncompliance with G.L.c. 90, §2 constitutes ineffective assistance of counsel. In support, Foster points to the language of the statute itself which states that a defendant has a defense in court to a violation where a defendant has not been given a copy of the citation at the time and place of the violation. See G.L.c. 90, §2.[7] Officer Otrando of the Attleboro Police Department issued the citations dated 3/30/95 to Foster for the offenses and mailed the citations to Foster at the address listed on his driver’s license. Foster claims the following: that he never received the citations, if they were mailed at all, because they were mailed to an old address; that mail was not the proper method for delivery of the citations; and that the judicial exception to compliance (in cases where there has been an arrest) does not apply in this case because Foster was unaware that he was under arrest.
The purpose of the “no fix” law, as G.L.c. 90C, §2 is often called, was to prevent the misuse of traffic citations and to provide prompt and proper notice of the alleged to the putative offender. See Commonwealth v. Babb, 389 Mass. 275, 283 (1983), citing Commonwealth v. Pappas, 384 Mass. 428, 431 (1981). While the procedures of the statute are to be enforced with “appropriate strictness," Massachusetts courts have held that the failure by officers to comply with the procedures of the statute is not fatal where the purposes of the statute have not been frustrated. Babb, 389 Mass. at 283. Where the defendant has been arrested, courts have held that the procedures of the statute do not apply because the “suspicion of‘fix’ could not arise in that situation and the offender was put on adequate notice.” Id., quoting Commonwealth v. Perry, 15 Mass.App.Ct. 281, 283 (1983). Moreover, the “very seriousness of particular charges tends to minimize the importance of absolute observance because, again, ‘fix’ is virtually excluded, and notice is implicit.” Id.
Here, Foster was charged on the citations with “OUI (Alcohol), Endangering, Serious bodily injury/OUI Negligent Operation, Serious bodily injury/OUI Negligent operation, Unregistered, Uninsured, Attaching Plates.” There is no question that these are very serious charges from a automobile accident in which both drivers sustained injuries requiring lengthy hospitalization. Additionally, Foster was put under arrest at the hospital, which falls into the judicially recognized exception to the statute. See Babb, 389 Mass. at 283. Foster was subsequently released by the Magistrate after Foster stated that he understood his rights and the charges against him. See Exhibit D, p. 3. Foster gave an indication that he understood when he was informed that he was under arrest. In response to the officer he replied, “I wasn’t driving,” which conveys that he knew that he was in serious trouble for the accident that had occurred a short time before and was attempting to escape responsibility for the accident. It appears that the purposes of the statute have in no way been frustrated by the actions of the police in this case. Rather, the objectives of notice and the prevention of “fixing” were complied with in this case.[8]
Since there was no substantial ground of defense available, Foster’s counsel did not provide him ineffective assistance on this basis.
(c.) Failure to advocate effectively at sentencing.
Foster faults his attorney for his performance during Foster’s sentencing, claiming that counsel failed to properly investigate and prepare the case, and that his lawyer effectively joined the prosecution in the case by stating that the defendant should be “punished good” and asking for an on and after sentence. Foster also claims that his lawyer did not present background information including Foster’s medical history to mitigate punishment.[9]
Defendant refers to Commonwealth v. Lykus, 406 Mass. 135, 144-46 (1989), for support of his position that asking for an on and after sentence constituted ineffective assistance of counsel outright. See Memorandum in Support of Defendant’s Motion, p. 20. In the Lykus case, the defendant’s counsel failed to make any reference to defendant’s employment history, charitable activities or contributions to the community during his statement at the sentencing, nor did counsel call any witnesses on behalf of the defendant. The defendant’s lawyer also failed to make a request for *241 concurrent sentences. See Lykus, 406 Mass. at 146. The Supreme Judicial Court determined that, based on the totality of the circumstances at the sentencing hearing, the defendant received ineffective assistance of counsel. See Lykus, 406 Mass. at 145.
This case is factually distinct from Lykus. While Foster’s attorney did ask for a sentence that included an on and after sentence, that fact in itself does not constitute ineffective assistance of counsel. Rather, the Lykus court considered the totality of all circumstances at the sentencing hearing, not just the fact that counsel did not ask for concurrent sentences. In this case, contrary to Foster’s assertions, his attorney did present background information on his client’s behalf. He presented the court with a letter from the defendant, which the court read during the disposition, before sentencing. SeeTr. of Plea, p. 31, 1:9-11. Counsel also noted on the record that he had discussed Foster’s history with the court during the lobby conference preceding the disposition. Foster’s attorney did call several witnesses on Foster’s behalf, in which the attorney brought to the court’s attention Foster’s previous periods of sobriety, his history as a good father, the fact that Foster was a hard worker at his job as a self employed welder and metal fabricator. Foster’s attorney argued during the hearing that Foster was a good person and that he had made efforts to his battle with alcoholism.
It should also be noted that counsel’s statement that Foster “should be punished good,” is followed immediately by the statement, “(t]o what extent he’s punished I guess is the issue,... I would ask that you take into consideration what people said in his behalf.” Tr. of Plea, p. 41, 1.17 to 21. The attorney’s comment in context does not indicate a lack of advocacy on his client’s behalf but instead appears to acknowledge the fact that Foster had just pleaded guilty to his fifth operating under the influence charge, where the defendant had previously served, at most, sixty days for the second and third convictions. In the full context of the comments by Foster’s attorney, the comment is innocuous.
Also, Foster’s attorney did present evidence of Foster’s medical background to mitigate his sentence. As explained above, I reject the notion that Foster received ineffective assistance of counsel based on an alleged failure to investigate a mental health claim. With regard to informing the court about Foster’s alcoholism and drug problems, two of the witnesses presented on Foster’s behalf were associated with a drug and alcohol rehabilitation center in which Foster had spent a period of time. They testified about Foster’s time at the center, his struggles with alcohol, family problems and motivation for recovery. Foster’s mother also testified to Foster’s struggles jvith alcohol over the years.
In this case, the totality of the circumstances at Foster’s sentencing hearing do not reflect perfect performance by counsel, but the facts do not indicate a performance that fell “measurably below that which might be expected from an ordinarily fallible lawyer.” See Clarke, 44 Mass.App.Ct. at 512. He therefore lacks any grounds to assert deficient performance to constitute an ineffective assistance of counsel claim.
ORDER
For the foregoing reasons, defendant’s motion to correct an illegal sentence, or in the alternative, to withdraw his guilty plea and for a new trial is DENIED.

 The indictments charged Foster with the following:
No. 36502, violation of G.L.c. 90, §24L(1), operating under the Influence negligently causing serious bodily injury;
No. 36503, violation of G.L.c. 90, §24{l)(a)(l), operating under the influence, second and subsequent offense;
No. 36504, violation of G.L.c. 90, §24, operating so as to endanger;
No. 36505, violation of G.L.c. 90, §9, operating an unregistered motor vehicle;
No. 36506, violation of G.L.c. 90, §34J, operating an uninsured motor vehicle;
No. 36507, violation of G.L.c. 90, §23, illegally attaching plates;
No. 36508, violation of G.L.c. 266, §60, receiving stolen property of the value of less than $250.

 Foster was sentenced to two and one-half years for the violation of G.L.c. 90, §24(l)(a)(l), operating under the influence, second and subsequent offense, and for violation of G.L.c. 266, §60, receiving stolen property of the value of less than $250. Foster also received a sentence of two years for the violation of G.L.c. 90, §24, operating so as to endanger, also to ran concurrent to the sentence imposed for indictment no. 36502.

 There can be little confusion that Foster was pleading guilty to the felony portion of G.L.c. 90, §24L{1) and not the misdemeanor portion of the statute, in consideration of the fact that Foster’s own counsel, the district attorney, and the court throughout the colloquy referred to a proposed sentence for indictment no. 36502 to be a term of up to ten years. See Tr. of Plea at p. 8, 1.22 top. 9, 1.3; p. 28,1.15-17;p. 10,1.5-6. The maximum penalty for the misdemeanor portion of the statute is only two and a half years. Moreover, none of the indictments charged of Foster in addition to no. 36502 carries a maximum greater than two one-half years.

 After the recitation of the facts by the assistant district attorney, the court asked the following four questions of the defendant:
Q. Sir, did you hear now the facts as stated to the court by the assistant district attorney?
A. Yes, I did, your Honor.
Q. Did you, in fact, commit the acts as stated to the Court by the assistant district attorney?
A. Yes, your Honor.
Q. If there are any facts you feel are different or left out, would you please tell me.
A. No.
9. Do you understand by pleading guilty you admit the facts now told to the Court by the assistant district attorney are true, and you cannot appeal my finding of guilty if I decide to accept your guilty plea, sir?
A. Yes, I do, your Honor.
Tr. of Plea, p. 16, 1.5-1.19.

 Dorland’s Illustrated Medical Dictionary, 26th Ed. defines dysthymia as “mental depression.”

 See Exhibit U, Good Hope Center Discharge Summary, 11/30/92, stating that “[a]t the time of his admission he was diagnosed to be in a severe to severe and chronic degree of trouble with alcohol and other substances as evidenced by his long financial problems, estrangement from his wife and emotional problems. It seemed that he had been in this degree of trouble for the last 10-12 years.”

 The statute states, in relevant part:
A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, .except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and noncriminal method for disposing of automobile law violations, justifies the failure.
G.L.c. 90C, §2.

 Foster submits that he had insufficient notice — that his intoxication and severe injuries from the crash left him without any memory of the events for some period of time. As previously explained, Foster was given notice vis a vis the arrest and the seriousness of the charges. Moreover, the citations were mailed to him at the address listed on his driver’s license, which is an acceptable form of delivery under the statute where there is a justified failure for instant delivery: ”[i]n such case the violator shall be recorded upon a citation as soon as possible after such violation and the citation shall be delivered to the violator or mailed to him at his residential or mail address or to the address appearing on his license or registration as appearing in registry of motor vehicles records.” G.L.c. 90C, §2. It is not the fault of the Commonwealth that Foster failed to notify the Registry of Motor Vehicles when he changed addresses.

 With regard to Foster’s concern about his revise and revoke motion being filed beyond the sixty-day deadline, he suffered no prejudice from the late filing and it is not necessary to address this issue in any detail here.